# Staunton.

## SAUM V. COFFELT & ALS.

### October 6, 1884.

1. INFANTS—*Liability.*—An infant can be held liable for a fraud or a tort, but not, in general, on a contract express or implied.
2. IDEM—*Administrator—Officer.*—If letters of administration be granted to an infant under which he receives and disposes of assets of the intestate, an account cannot be directed in respect of his receipts during infancy. Nor is infant officer liable for money placed in his hands, unless he be proved guilty of a tortious conversion.
3. TRUSTS—*Direct—Constructive—Statute of Limitation.*—Direct trusts are exempt from the plea of the statute of limitations. ˙Otherwise, as to trusts by operation of law,—constructive trusts.
4. INFANTS—ADMINISTRATORS—*Case at Bar.*—In 1856, S., then in his seventeenth year, qualified as one of the administrators of H. He paid out on just debts all the assets that came to his hands, but did not apportion them ratably. He turned over everything in his hands to his co-administrator, in 1858, and left the state. In 1877, a bill was filed charging S. with *devastavit.* He plead infancy and the bar of the statute of limitations.

HELD:

    1. S. being an infant and innocent of fraud or tort, was not liable for the alleged *devastavit.*

    2. The lapse of the period of limitation would bar the claim against S. if he was otherwise liable.

Appeal from decree of circuit court of Shenandoah county, rendered April 18th, 1883, in the suit of William Coffelt against Joseph F. Saum and Joseph Hutchinson, administrators of Robert Hutchinson, deceased, and others. The circuit court at

the hearing, decreed that R. M. Conn, one of the defendants, recover of said Saum $283.83, with interest thereon from December 8th, 1857, till paid. From this decree Saum obtained an appeal and *supersedeas* from one of the judges of this court. Opinion states the case.

*H. C. Allen,* for the appellant.

*M. L. Wotten,* for the appellees.

FAUNTLEROY, J , delivered the opinion of the court:

The original bill in this case was filed in the county court of Shenandoah to July rules, 1871, and it was simply a creditor's bill in common form, seeking to subject the real estate of the deceased, Robert Hutchinson, to sale, and apply the proceeds thereof to the payment of his debts. On the 11th day of October, 1871, a decree was rendered by the said county court, referring the cause to a master commissioner for the proper accounts; and on the 9th day of April, 1872, upon a partial report of the master commissioner, a further decree was rendered in the cause, appointing special commissioners to sell the real estate, of which the said Robert Hutchinson died seized and possessed.

The cause was removed in 1873, by operation of law, to the circuit court of Shenandoah county.

In July, 1877, the complainant filed an amended and supplemental bill, in which he sets out that the special commissioners sold the said real estate, and that the sale had not been confirmed, and prays that the said special commissioners, under the decree of April 9th, 1872, be required to make a settlement of all matters touching said sale. The said amended and supplemental bill then charges Joseph F. Saum and Joseph Hutchinson, as administrators of Robert Hutchinson, deceased, with a *devastavit,* in that debts of his estate which were not pre-

ferred debts, were paid in full out of the assets, when they were only entitled to a ratable distribution, the estate being insufficient to pay them all in full. The cause was, in August, 1877, again referred to a master commissioner for an account and report on the several matters embraced in the amended and supplemental bill.

On the 17th of April, 1880, a decree was rendered submitting the cause to Judge R. H. Turner, of the twelfth judicial district, to be decided by him in vacation. Judge Turner, in pursuance of the said last named decree, made out a memorandum for the master commissioner, and on the 22d day of September, 1880, a decree was rendered directing him to revise and correct his report, in the light of the said memorandum.

On the 11th day of December, 1880, the defendant, Joseph F. Saum, filed his demurrer and answer to the amended and supplemental bill; and he pleaded *infancy* and the *statute of limitations*.

On the 5th day of January, 1882, the cause was again submitted to Judge R. H. Turner, to be decided by him in vacation, and in September, 1882, Judge Turner furnished a second memorandum, on which the decree of September 20th, 1882, was based, which settled the principles of the cause and recommitted it to a master commissioner to make out an account of the amounts due to the various creditors of the deceased, Robert Hutchinson, from the said Joseph F. Saum, one of his administrators, who was held liable for a *devastavit*, because he paid out the money received by him when an infant, in 1856 and 1857, from said estate, to its creditors without making a ratable distribution. The master commissioner made out the account and reported as directed; and on the 18th of April, 1883, his report was confirmed by a final decree then pronounced, in which, among other things, it is decreed that one R. M. Conn recover from the said defendant, Joseph F. Saum, the sum of $283.83, with interest from December 8th, 1857, until paid.

In his answer, the said Joseph F. Saum avers that he was an

infant—in the seventeenth year of his age—in 1856, when he was appointed by the county court of Shenandoah county one of the administrators of Robert Hutchinson, deceased; that he had not wrongfully converted any of the assets of the said estate, but had applied all that came into his hands to the payment of debts of the estate justly due; that after being connected with the estate of Robert Hutchinson, deceased, for a short time, in 1857, as a co-administrator with Joseph Hutchinson, a brother of the deceased, he turned over to his said co-administrator all the assets of the estate in his hands, and left the state of Virginia on the 20th April, 1858, and removed to the west, and did not return to Virginia until after the commencement of the civil war, in 1861, when he entered the Confederate army, and that he has had nothing whatever to do with the administration of the said estate since 1858.

The whole amount of assets which, the record shows, went into the hands of these co-administrators of the estate was $506.92; and a settlement made of their accounts December 8th, 1857, shows a balance due the estate of only $97.57½.

The record shows that Joseph F. Saum was in his seventeenth year when he was appointed, in 1856, as co-administrator with said Joseph Hutchinson, a matured man, and a brother of the deceased, Robert Hutchinson, to whom he turned over everything that had come to his hands of the estate, and that he did not convert any of the assets of the estate to his own use.

R. M. Conn came into this suit in 1877, as a co-defendant with Joseph F. Saum, to the amended and supplemental bill; and there is nothing in the record to show that he ever made any demand on Joseph F. Saum for his claim against Robert Hutchinson's estate. He sued Joseph Hutchinson as administrator of Robert Hutchinson, after the war; and in December, 1875, in an action of *assumpsit*, on an open account, he obtained a judgment against Joseph Hutchinson *alone*, as one of the administrators of Robert Hutchinson, deceased. Then he comes into this suit with his judgment, and is allowed by the court to

participate in the distribution of assets which, more than twenty years before, had been consumed in the payment of other admittedly honest debts of the estate in 1856—twenty-one years before he brought his action of *assumpsit,* on an open account, against Joseph Hutchinson alone; and yet, by the decree complained of, Joseph F. Saum, the infant co-administrator of Robert Hutchinson, who had converted none of the assets of the estate to his own use, and who had settled his accounts and turned over everything that had been in his hands, including the balance of $91.51½ found to be due the estate by the said settlement of December 8th, 1858, into the hands of his co-administrator, Joseph Hutchinson, and then left the state, is decreed to pay to his co-defendant, R. M. Conn, his claim out of his own pocket, amounting, principal and interest, at the time of the decree, to upwards of $700—considerably more than the whole personal estate of Robert Hutchinson was worth; and this, by a decree based on the loose allegations of a bill not filed by Conn, and to which Joseph F. Saum could not have the benefit of an answer by Conn. The bill does not allege that Joseph F. Saum was guilty of any fraud. The record shows that he was a mere boy, who was persuaded by the friends, neighbors and relatives of the intestate to qualify, in connection with a brother of the intestate, as administrator of his estate. He relied upon them, and thought that he was doing all that was right. He was a careful, prudent and reliable boy, and Conn himself was, doubtless, cognizant of the whole transactions all the time. Every dollar of the money of his intestate which came into his hands he honestly appropriated in payment of the just debts of the estate. He acted in perfect good faith, and, at or before he was eighteen years of age, he turned over everything belonging to the estate to his co-administrator, a matured man and brother of the intestate, and left the state, thus ending his connection with the estate in April, 1858. And now, after more than a quarter of a century has elapsed, he is called upon to pay to R. M. Conn, a creditor of the estate, by judgment obtained upon a contested

open account in 1875, a sum largely in excess of the whole original estate. The record shows that the sale of the real estate of Robert Hutchinson, deceased, for which this suit was alone originally brought, and which had been ordered by an interlocutory decree of the county court, pronounced in the cause, was never confirmed, and that none of the decrees rendered in the cause after 1872, including the final decree, take any notice or account of the said real estate.

The plea of infancy ought to have availed, and should have concluded the matter in favor of Saum. In the decree complained of, Judge Turner decides that he could not be held liable on his bond, and that his appointment and qualification as administrator was a nullity; but that he is liable as a constructive trustee by operation of law. If he could not be held liable on his bond (or *express contract*), it is difficult to perceive how he could be held liable on an *implied* contract as a mere constructive trustee. The plea of *infancy*, upon every reason of law, should be as availing in the one case as the other. All the authorities are to the effect, that an infant can only be held liable for a *fraud* or a *tort*, which is wholly independent and irrespective of *contract*—express or implied. There is no pretence, assertion or intimation in this whole record that Saum has practised any *fraud* or been guilty of any *tort* that could render him liable in an action *ex delicto*. Judge Turner decides that he cannot be held liable for a *devastavit*, as charged in the amended and supplemental bill, because of legal incapacity to be administrator and to commit the *devastavit*.

It is laid down in Bacon's Abridgment, vol. V, p. 109: "An infant may be appointed executor, but he cannot administer until he is of the age of seventeen; * * * but an infant cannot be an administrator before the full age of twenty-one years, because before that age he cannot give bond, as required by the statute, to administer faithfully."

The case of *Hindmarsh v. Southgate*, 3 Russell, 324, is on all fours with the case at bar. That was a case in which creditors

sued for the administration of the assets of an intestate. A female *infant* had obtained letters of administration to the estate. The bill alleged that the administratrix had converted the assets to her own use. She answered her *infancy;* and the chancellor, Lord Lyndhurst, held: "If letters of administration be granted to an *infant,* under which he receives and disposes of assets of the intestate, an account cannot be directed in respect of his receipts during infancy." See *Allen* v. *Minor,* 2 Call, 70; Tyler on Infancy and Coverture, § 7, p. 41.

"Neither is an infant liable civilly to any person who intrusts him with money which he negligently misapplies." Chitty on Contracts (11th Amer. Ed.), vol. I, p. 207.

"Should an infant be permitted, however, to hold an office of pecuniary trust, and he be guilty of negligence with respect to the moneys placed in his hands, those to whom the money belongs would have no remedy, unless the infant officer should be proved guilty of a tortious conversion." Tyler on Infancy and Coverture, p. 175. But, if the appellant, Saum, was trustee by construction of law, the plea of the statute of limitations should have availed him, even if the plea of infancy could not avail him. In cases of constructive trust—trusts by operation of law—the rule is entirely different, in respect to the bar of the statute, from that which obtains in cases of direct or express trust. In the former, the plea of the statute of limitations is an admissible plea, while not so in the latter. Angell on Limitations, secs. 178, 468 to 471; Hill on Trustees, marg. p. 265.

Judge Turner, in his opinion, refers to Perry on Trusts, sec. 863; but this authority relates to *direct* or *express trusts,* and has no applicability whatever to the case at bar. If Joseph Hutchinson, who was duly and properly appointed and qualified as administrator, had instituted an action at law, in 1871, against Joseph F. Saum, to recover the assets that had come into the hands of Saum, in 1856–7, he could certainly have availed himself of the plea of the statute of limitations in bar

of a recovery, even if he had not relied on the plea of infancy; for *five* years, excluding period of stay law, &c., would have elapsed between the time when the cause of action accrued, and the institution of the suit.

We have thus disposed of this case, without considering the *demurrer*, and sundry others of the assignments of error in the record. Enough has been said already to demonstrate that the decrees complained of are erroneous; and the same must be reversed and annulled, and the bill be dismissed as to the appellant.

DECREES REVERSED.