CHARLESTOWN.

CONNOWAY v. MCCANN.

Submitted September 15, 1887.—Decided September 23, 1887.

FRAUDULENT CONVEYANCE.

> In accordance with the well settled law in this State a deed held fraudulent as to a judgment-creditor.

*Dayton & Dayton* for appellant.

*C. C. Higginbotham* for appellees.

JOHNSON, PRESIDENT :

In April, 1883, John Connoway filed his bill in the Circuit Court of Upshur county to enforce judgment-liens against the lands of Samuel McCann and S. B. McCann. He charges, that said defendants have no personal property, out of which to satisfy said judgments, one against S. B. McCann and

Samuel McCann jointly for $1,000.00 and the other against Samuel McCann alone for $300.00. The bill alleges, that S. B. McCann is the equitable owner of a tract of 133 acres of land, which was conveyed to him by J. M. Bennett and wife in 1881; that S. B. McCann was surety on an injunction-bond given in a suit by this plaintiff against Samuel McCann; that an action had been brought on said bond; and that to defeat the plaintiff and for the purpose of hindering, delaying and defrauding him said S. B. McCann had conveyed said 133 acres of land without consideration to his son, W. J. Mc-Cann. He filed an amended bill, in which he alleged, that said 133 acres of land was part of a tract of 228 acres, which had been by J. M. Bennett and others conveyed to Samuel McCann; that the purchase-money had not been paid, and said McCann had sold 100 acres to one John Pharris, who made valuable improvements on it, and that said McCann desiring to have it back thus improved colluded with his co-defendant, J. M. Bennett, and as the result a chancery suit was immediately instituted in behalf of the grantees; that the suit was not defended by Samuel McCann, and a decree was entered for the sale of said land to pay the purchase-money, and at the sale J. M. Bennett became the purchaser, and the sale was confirmed; that McCann deluded Pharris into the belief, that he would purchase the land, so that he could make him, Pharris, a title; that McCann thus colluded and for the purpose of defrauding the plaintiff procured the sale to be made and confirmed to Bennett and also procured the conveyance of the 133 acres, part of the 228 acres, to be made to S. B. McCann; that the 133 acres embraced all the choice land in the tract of 228 acres and also the improvements of Pharris, who had at some time unknown to the plaintiff given up and surrendered possession of the same; that said 133 acres, at the time it was so procured to be conveyed to said S. B. McCann and subsequently to W. J. McCann, was worth $1,500.00 or $2,000.00. The bill further charges that the scheme was to enable Samuel McCann to avoid his liability to the plaintiff, overlooking the fact that S. B. McCann was jointly bound; that Samuel McCann resides on the 133 acres and controlled the same as his own and has sold a part to defendant Luckey, who has taken possession of such part ;

and that the said defendants all combine and confederate together to defraud the plaintiff &c.

W. J. McCann answered the original bill and in his answer says: "On the 6th day of September, 1882, the said S. B. McCann and wife in consideration of $200.00 cash in hand paid to him by this defendant, and that this defendant should pay to J. M. Bennett the purchase-money due to him by S. B. McCann, conveyed to him the said land." He denies all fraud charged. S. B. McCann also answered the original bill and in his answer admits, that Bennett and wife in consideration of $225.00 conveyed to him the 133 acres of land. The purchase-money was to be paid in three years with interest paid annually, and a lien was reserved for the payment of the purchase-money. He says, he paid the interest for the year ending the 30th of September, 1882, but has paid no part of the purchase-money. He further says, that on the 6th of September, 1882, himself and wife in consideration of $200.00 cash in hand paid to him by W. J. McCann, and that the said McCann should pay the purchase-money due to Bennett, conveyed to said W. J. McCann the 133 acres of land. He also denies the fraud charged in the bill. Both the said defendants also answered the amended bill, in their answer setting out their defence more specifically, and more particularly denying every charge of fraud made in the amended bill. Samuel McCann and J. M. Bennett did not answer the bill.

The cause was heard on the 17th day of June, 1886, and the plaintiffs' bill was dismissed with costs. From this decree John Connoway appealed.

Depositions were taken on both sides; and one witness for plaintiff fixed the value of the 133 acres at $10.00 per acre or $1,330.00. Another witness thought it was worth $8.00 per acre or $1,064.00. The defendants' witnesses estimated it as follows: S. B. McCann at $325.00; W. J. McCann "thought it was worth, what he agreed to pay for it." O. S. Zirkle valued it at $4.00 *per* acre or $532.00. S. B. McCann's deposition was re-taken; when he said, he thought the land was worth $4.00 *per* acre; and Samuel McCann puts its value at $4.00 *per* acre. The average of values thus put upon the

land would make it worth more than twice what W. J. McCann agreed to pay for it.

. Under the well-settled rule for the discovery of fraud in a conveyance we think there is no doubt, that the deed for the 133 acres of land executed by S. B. McCann and wife to W. J. McCann on the 6th day of September, 1882, is fraudulent and void as to the judgment against S. B. McCann. The charges of fraud in this cause are numerous. The consideration, as we have seen, is inadequate. The conveyance was from father to son. The son was a minor at the time it is pretended that the contract of purchase was made. The deed was made to him on the very day, on which he became twenty one years of age. The consideration expressed in the deed is $200.00 cash in hand and the assumption of the payment of $225.00 due to Bennett, when the cash-payment as shown by the depositions of both the grantors and grantee was only $100.00. This $100.00 was claimed to have been sent from Pennsylvania, where the son, who was then a minor, was working in a pulp-mill, months before the deed was made. There was no contract in writing other than the deed in reference to said purchase. The deed was made while the suit against the father on the injunction-bond was pending, and about one month before the judgment was rendered. These and other circumstances appearing in the record convince us, that the deed was executed with intent to hinder, delay and defraud the plaintiff in the collection of his judgment. There is no proof of fraud or collusion against Bennett; and in fact the charge in the bill is too vague and indefinite to require any answer from Bennett. The land was sold for the purchase-money, and Bennett bought it, and the sale was confirmed. The title and interest of Samuel McCann was then entirely extinguished, and Bennett had a right to sell it or a part thereof to whom he pleased. He sold 133 acres of it at a very low price to S. B. McCann, who permitted his old father to live on it, which was a praiseworthy action, provided he was not thus interfering with the rights of creditors. There is no proof, that the land was bought by S. B. McCann for his father. He bought it for himself. He then, to put it beyond the reach of his creditors, fraudu-

lently conveyed it to his son. It is liable for the joint judgment against S. B. McCann and Samuel McCann.

The decree rendered in the cause by the Circuit Court of Upshur on the 17th day of June, 1886, is reversed with costs against S. B. McCann and W. J. McCann, and this cause is remanded to the Circuit Court of Upshur county with instructions to enter a decree subjecting said 133 acres of land to the payment of the plaintiff's joint judgment against S. B. McCann and Samuel McCann and for further proceedings.

REVERSED. REMANDED.