# CHARLESTON.

THE EDWARDS MANUFACTURING Co *v.* CARR *et al.*

Submitted June 10, 1909.    Decided May 11, 1909.

1. FRAUDULENT CONVEYANCES—*Presumptions and Burden of Proof —Transactions Between Husband and Wife.*
   The statute, enabling a married woman to carry on business

in her own name, freeing her separate property from the control of the husband and liability for his debts, and making her earnings separate estate, does not destroy the presumption, in favor of the husband's creditors, that his conveyance of property to her was voluntary, nor relieve her from the burden of clearly proving payment of a fair and adequate price therefor with money, procured from some one other than her husband. (p. 676.)

2. Evidence—*Admissions—Weight.*

Though an admission, accompanied by explanatory or exculpatory matter, cannot be introduced as evidence without the explanation, if objected to, the weight to which each is entitled, after introduction, is a matter wholly within the determination of the court or jury trying the issue. (p. 677.)

3. Fraudulent Conveyances—*Evidence—Sufficiency.*

Expenditure of money by a husband in improving his wife's property having been admitted, in a suit by his creditors to charge her property with his debts to the extent of such expenditure, the mere uncorroborated oral testimony of the husband and wife is not sufficient to establish repayment of the money. (p. 678.)

4. Same—*Intent—Existing Creditors.*

As to creditors existing at the date thereof, a gift of property or money is void, no matter what the actual intent of the parties may have been. The statute makes proof of lack of a consideration, valuable in law, conclusive. (p. 679.)

5. Same—*Intent—Subsequent Creditors.*

In order to set aside a voluntary conveyance, a subsequent creditor must prove actual fradulent intent, and, though there may have been existing creditors, at the time of the conveyance, who could have set it aside without such proof, and the grantor was never afterwards free from debt, though the prior or existing debts were afterwards paid, such subsequent creditor cannot be subrogated to the rights of the prior creditors. (p. 680.)

Appeal from Circuit Court, Cabell County.

Bill by the Edwards Manufacturing Company against T. M. Carr and Sarah A. Carr. Decree for complainant, and Sarah A. Carr appeals.

*Reversed and Bill Dismissed.*

Simms & Enslow, C. W. Campbell, and Holt & Duncan, for appellant.

WALLACE & FITZPATRICK and W. K. COWDEN, for appellee.

POFFENBARGER, JUDGE:

Deeming the evidence, adduced for the purpose, sufficient to prove that T. M. Carr, a debtor, had expended $1,500.00 of his own money on improvements, made on a certain lot, owned by his wife, Mrs. Sarah A. Carr, in fraud of the rights of his creditors, the circuit court of Cabell county, pronounced a decree, charging said property, in favor of the creditors, to the extent of $1,950.00, the principal sum so invested and interest thereon, and Mrs. Carr has appealed.

The evidence covers a considerable period of time and a great many transactions, varying widely in respect to the extent or degree of their bearing on the question at issue. The Carrs were married in 1884 and came to Huntington in 1887, bringing with them about $1,000.00 in money, and, soon afterwards, bought a lot on Fourth Avenue, taking the title in Mrs. Carr's name. On this, they built a house, partly with lumber and materials they had accumulated before coming to Huntington, and partly with materials purchased as the work progressed; and, in this house, they resided practically all the time, until they moved into their present residence on Sixth Avenue, the property in question, about July, 1901. The husband, a carpenter by trade, carried on no business of his own until about the year 1896, when he engaged in manufacturing, merchandising and contracting, successively, and wound up insolvent about the time the new house was completed, but not very heavily indebted. His debts are estimated at about $2,000.00. The wife is said to be worth from $12,000.00 to $15,000.00, consisting principally of real estate. Before marriage she taught school and clerked in a store. After marriage, she received all of her husband's earnings until 1896. For three or four years, she kept green-houses, producing flowers for sale, and claims to have made considerable money in that way. While living in the Fourth Avenue house she kept two or three boarders, and, after the completion of the new one, a large sixteen room house, she kept several and derived from the rooms rents, ranging from $50.00 to $70.00 per month. Soon after the house on Sixth Avenue was built, she sold the Fourth Avenue house for $3,000.-00. In January, 1902, she purchased from R. S. Prindle an-

other piece of property, paying $800.00 cash and assuming a trust lien on it for $800.00. In February, 1903, she purchased another from T. W. Peyton, for which she paid $573.12 and assumed a debt of $691.88, constituting a lien thereon. The property on which the residence is was bought of Rufus Switzer November 27, 1899, for $1,200.00, of which $500.00 was paid in cash, and the house afterward built on it at a cost of about $6,000.00. Mrs. Carr claims to have had large amounts of the materials used in it purchased and stored on her Fourth Avenue lot before she began building. Both she and her husband admit that the former paid about $1,500.00 for labor and materials that went into the construction of the house, but both emphatically testify that all this money was repaid and more than repaid. They both say he got $1,200.00 out of the proceeds of the sale of Mrs. Carr's Fourth Avenue lot, besides $150.00 she gave him with which to pay a debt to one Roberts and $225.00 with which to buy out the business of one Palmer, but this stands on their testimony, uncorroborated or strengthened by any written evidence or memoranda. That Carr was engaged in business, from 1896 until sometime in 1902, is admitted, and, in that period, it is likely he carried some indebtedness, but the only indebtedness proven in the cause is subsequent in date to the building of the house, and none is shown to have been incurred or existed between 1884 and 1896, a period during which he says he gave all his earnings to his wife, as he could lawfully have done, if he owed nothing and intended no fraud upon subsequent creditors.

The principal contentions of counsel for the appellant consist of these three propositions: (1) the statute, making a married woman's earnings her separate property, has changed the rule, respecting the burden of proof, or presumtion against the wife, in cases of this kind; (2) the admission of the husband's contribution is nullified by the accompanying claim of repayment; (3) the evidence proves ample financial ability on the part of the wife to obtain all the property she has without any aid of her husband except that rendered by him prior to 1896, and that the money contributed by him to the cost of the building was repaid; (4) there is no proof that Mrs. Carr had any knowledge of her husband's indebtedness or any fraud-

ulent intent on his part in contributing to the cost of the building.

That the burden of proof has not been changed nor the presumption against the wife, in cases of this kind, destroyed by the married woman's statute, enabling her to carry on business in her own name and making her earnings her separate property, has been expressly decided in *Miller* v. *Gillispie,* 54 W. Va. 450. See opinion on re-hearing, page 463. Besides, these old rules have been steadily and undeviatingly adhered to and enforced ever since the passage of the married woman's statute.

The rule saying an admission, accompanied by an explanation or discharge, must be taken as a whole, does not relate to the probative force of evidence. It is a rule governing and controling the question of admissibility. Such a statement must go to the jury as a whole, and it is error to allow the admission to go in and exclude the explanatory or exculpatory part. The party against whom it is introduced has an absolute right to have the entire statement considered and is protected against the introduction of only the prejudicial part of it. But, after it has been introduced, it is with the jury or court to say how much weight shall be given to each of the parts, and naturally the admission has greater weight than the explanation because it is a statement against interest while the explanation is self-serving. However, if the court or jury believe the entire statement to be true, it will find accordingly.

In view of the finding of the trial court, it is hardly necessary to discuss the tendency and weight of the evidence in respect to anything except the alleged repayment of the money contributed by the husband to the cost of the building. The decree does not proceed upon the assumption of finding of fraud in the purchase of any of the lots. It charges the Sixth Avenue property to the extent of the husband's contribution to the cost thereof and no further. We think the evidence of repayment fails to measure up to the requirement of the rules of evidence in cases of this class. The admission casts upon the wife the burden of full and clear proof of repayment. Nothing is offered except the uncorroborated statements of herself and her husband. No documentary evidence of any kind is produced. No note, memorandum or other paper, evidencing indebtedness of her-

self to her husband for these advancements is shown, nor any check, draft, bank-book or other paper, showing repayment, is disclosed. It is said she gave her husband certificates of deposit amounting to $1,200.00, received by her as part of the proceeds of her Fourth Avenue property, but these certificates are not produced nor were any of the bank officers called upon to testify to their assignment to the husband. It is highly probable that she had such certificates for it appears that she sold her Fourth Avenue property for $3,000.00, $500.00 of which was represented by a lien assumed by the purchaser, but she had previously invested a large amount of money in the new house and lot, exclusive of the contribution of her husband, far exceeding the entire value of the Fourth Avenue property. This investment, it seems to us, represents all the moeny she could possibly have had from sources other than her husband. Besides, her rapid accumulation of property is coincident in point of time with the financial reverses and misfortunes of her husband. These circumstances call upon her for clear, strict and full proof of the fact of repayment, and the rule is that, as against creditors, the mere verbal testimony of husband and wife, as to money transactions between them, will not avail. *Zinn* v. *Law*, 32 W. Va. 447; *Bank* v. *Atkinson*, 32 W. Va. 203; *McGinnis* v. *Curry*, 13 W. Va. 29; *Horner* v. *Huffman*, 52 W. Va. 40.

But this conclusion does not sustain the decree. The money so advanced and not deemed to have been repaid, was a voluntary settlement on the wife. It would be void as against creditors, existing at the time thereof, but it cannot be impeached on that ground alone by a subsequent creditor. Code, chapter 74, section 2, saying: "Every transfer or charge which is not upon a consideration deemed valuable in law, shall be void as to creditors whose debts shall have been contracted at the time it was made; but shall not upon that account merely be void as to creditors whose debts shall have been contracted, or as to purchasers who shall have purchased, after it was made." There is not a word of direct evidence to the effect that Mrs. Carr knew of any indebtedness on the part of the husband, at the time she allowed this contribution to be made to the cost of her building. In her testimony, she says she knew nothing about her husband's business affairs, and also that she "knew nothing of Mr. Carr's debts." The bill does not specifically allege knowl-

edge, on her part, of the existence of her husband's debts, at the time she bought the Sixth Avenue property, or at the time she built the house on it. It charges generally that she knew of the insolvency of her husband and his purpose to defraud his creditors, his insolvency and inability to pay his debts, at the time of the purchase of the property, and the continuance of indebtedness then existing, his placing the property, purchased, in the name of Sarah A. Carr for the purpose of hindering, delaying and defrauding his creditors, the lack of any consideration, moving from her, and knowledge on her part of the fact that her husband was putting property in her name for the purpose of avoiding payment of his debts and preventing his creditors, then in existence and any future creditors that he might have, from subjecting the same to the payment of his debts. To these allegations Mrs. Carr, after detailing facts and circumstances, relating to her marriage, earnings, purchases and sales of property, and business transactions with her husband and others, put in the following general denials: "She expressly denies all allegations in regard to any of said purchases. She denies that at the time the said Carr originally gave her the money which she invested in the Fourth Avenue property which she sold, that there were any creditors who could object to the said gift. She denies that any of the existing debts are continuances of the debts existing in 1899. She denies each, every and all allegations of the plaintiff's bill and amended and supplemental bill which seeks to impute her with fraud." Being unexcepted to, this general denial is good. She also avers her belief in the correctness of the facts set out in her husband's answer, in which he denied that his wife had any knowledge of any attempt to defraud his creditors, "not then existing, by purchasing property in her name, which fraud never did exist," and says "the debts against him and the judgments to recover against him are not claims against his wife" nor are "his debts continuances of any debts which he owed before the time his wife became the owner of said real estate." None of the debts involved in this suit seem to have been contracted earlier than the year 1902. That of the Edwards Manufacturing Co., the plaintiff in the bill, was contracted in November, 1902, long after the completion of the house in question. There is no presumption of fraudulent intent. That is a fact which cannot

be assumed. It must be proven. The presumption, imposing such a great burden upon the wife, when property stands in her name, is not that of fraudulent intent, but that of payment of the purchase money by the husband. If she fails to discharge that burden by showing payment by her with money derived from other surces, and the debts are pre-existing ones, the conveyance is set aside as a voluntary one, or as having been made without consideration. In such case, no proof of fraudulent intent is necessary, but, if the creditor be a subsequent one, the fact that the conveyance or the money expended upon the wife's property was a gift, does not make a complete case for relief. Fraudulent intent must be established in addition thereto. That the conveyance or expenditure of money on the property was without consideration is a circumstance to be considered, in pursuing the inquiry, as to whether such intent existed, but that alone does not justify the inference of fraud.

That Mrs. Carr has rapidly accumulated property, while her husband sustained losses, and finally became insolvent, is a circumstance calling for a close scrutiny into their financial transactions, but it is wholly insufficient to prove fraud in favor of subsequent creditors. That she has extensive and valuable property, amounting in value to three or four times that of the property owned by her in 1899, and owes only about $800.00 on it, argues that she received assistance from her husband. She does not deny that she did to the extent of $1,500.00. Her husband, according to his testimony, sustained some losses before the house was completed and some afterwards. Notwithstanding this, all of the indebtedness existing at the time of the donation made to his wife has been paid. He continued in business, contracting new debts and paying old ones. This argues intent on his part to continue in business, not to withdraw what property he had from the reach of his creditors and quit, and tends to repel the charge of fraud. *Greer* v. *O'Brien,* 36 W. Va. 277, 289; *Bank* v. *Patton,* 1 Rob. (Va.) 536. There was no conveyance of property to his wife on the faith of which the present creditors may have extended credit.

This view of the case seems to bring it clearly within the principles declared in *Greer* v. *O'Brien,* 36 W. Va. 277, and *McCue* v. *McCue,* 41 W. Va. 151. In both of these cases, as well as others therein reviewed, it was held that the attacking subse-

·quent creditor must prove some additional circumstance, connected with the fact of the donation and the indebtedness of the husband, in order to charge the wife's property. This doctrine dates back ·as far as *Lockhart* v. *Beckley,* 10 W. Va. 87, and *Hunter's Ex'r.* v. *Hunter,* 10 W .Va. 321. *Greer* v. *O'Brien* ·expressly and distinctly decides that the old law of subrogation ·of subsequent creditors to the rights of prior creditors, in respect to' voluntary conveyances, has been cut up by the roots and ·destroyed by section 2 of chapter 74 of the Code.

Only two circumstances, relied upon as proving actual fraudulent intent, are deemed worthy of notice. C. F. Millender testifies that, some ten years before the Sixth Avenue property was bought, an'd, at the time of the purchase of the Fourth Avenue property, Carr told him he had made the latter purchase in his wife's name because something hung over him at Ripley, Ohio, whence they had come; but there was no specification of this something nor any indication as to what it was. The admission long antedated the matters involved here. Carr swears he owed no debts in Ripley and it is not shown that he did. Besides, this admission related to property not in controversy here, and no longer owned by Mrs. Carr. We think it is entirely too remote and indefinite to have any bearing on the present issue. At the time of the erection of the Sixth Avenue residence, Carr was conducting a mercantile business, called a paper store, in which he handled wall-paper and building materials. R. C. Rankin, a brother of Mrs. Carr, worked about the store and in that business. Two horses and a wagon were also used in connection .with it. Carr swears Rankin was simply employed by him and had no interest in the store, and also that Rankin was the owner of the horses, and that they were likewise hired by him, Carr. Rankin owned two adjacent half lots, the equivalent of one lot, in the city of Huntington, and, by a deed, dated February 22, 1902, and reciting a consideration of $2,500.00, he conveyed this real estate and all his right, title and interest in the two horses, wagon and stock of goods, wares and merchandise, in Carr's store, to Mrs. Carr. She says she paid nothing for any of this property, and never took possession of, or used, any of the stock of goods, which, she says, consisted of some wall paper and tools, worth probably fifteen or twenty dollars, but did take the horses and sell them. Her explanation as to the

real estate is that her brother, a single man, engaged and expecting to marry, had bought the real estate and commenced the erection of a house on it, in anticipation of marriage; that, the lady whom he expected to marry having become an invalid, he conveyed the property to his sister, Mrs. Carr, with the understanding that she should complete the house and keep it unless the lady should recover; and that, after the conveyance she, Mrs. Carr, borrowed $500.00 and completed the building, and, after the marriage of her brother, re-conveyed the property to his wife and he paid off the debt, made for the improvement of it. If the horses and wagon and other property described in the deed and used in Carr's business could be regarded as partnership property, and Mrs. Carr as having taken it with knowledge of its character and her husband's indebtedness at the time, it might prove participation on her part in the fraud of her husband against his creditors in respect to that property. This might justify the inference of fraud in the expenditure of money on her property. Such an inference as to intent, respecting one piece of property, may arise from proof of fraud, respecting another conveyed at or about the same time from one of the parties to another. *Colston* v. *Miller*, 55 W. Va. 500. But there is no proof that it was partnership property, or her husband's property. Nothing points in this direction except the deed executed by Rankin purporting to convey his right, title and interest in it, and the circumstances already detailed, relating to Rankin's connection with Carr's business. It would only appear by way of slight inference, contradicted by positive evidence. Besides, this transaction occurred about seven months after the completion of the building. It is remote in both time and connection. Having carefully examined and analyzed all the evidence, we are of the opinion that it wholly fails to establish the charge of fraud against Mrs. Carr.

For the reasons stated, the decree will be reversed and the bill dismissed.

*Reversed, and Bill Dismissed.*