# CHARLESTON

GRAHAM GROCERY CO. *et als.* v. CHASE *et als.*

Submitted February 2, 1915.    Decided March 9, 1915.

1. FRAUDULENT CONVEYANCES—*Creditor's Suit—Parties—Joint Debtors.*

    The co-debtors of one of two or more joint-debtors, who has made a fraudulent conveyance, are not necessary parties to a suit by creditors to avoid it. (p. 776).

2. SAME—*Suit to Set Aside—Fraudulent Intent.*

    In a suit by subsequent creditors to set aside a deed made by their debtor, without consideration deemed valuable in law and with intent to hinder, delay and defraud his creditors, brought within five years from the date of the deed, it suffices to prove fraudulent intent on the part of the grantor alone. Proof of knowledge thereof by the grantee is not required. (p.776).

3. SAME—*Setting Aside—Right—Intent of Grantee—Volunteer.*

    A mere volunteer participates in the fraud of the grantor, by his acceptance of a conveyance made with intent on the part of the

latter to defraud his creditors, or by his retention of the benefit thereof after notice of the intent with which it was made. (p. 779).

4.　Same—*Intent to Defraud Creditors—Effect.*
　　Intent to defraud existing creditors, in the execution of a voluntary conveyance, vitiates it as to subsequent creditors. (p. 779).

5.　Same—*Fraud of Creditors—Husband and Wife.*
　　A husband's disposition of practically all of his property, within a period of about two years, by voluntary conveyances to his wife, while owing some debts and contracting others, is fraudulent. (p. 782).

Appeal from Circuit Court, McDowell County.

Suit by the Graham Grocery Company and others against C. B. Chase and others. From decree for plaintiffs, defendants appeal.

*Affirmed and Remanded.*

*Strother, Taylor & Taylor,* for appellants.

*Cook, Litz & Harman* and *G. W. Howard,* for appellees.

Poffenbarger, Judge:

The decree complained of on this appeal set aside and annulled, so far as inconsistent with alleged rights of creditors, a deed by which C. B. Chase conveyed to his wife certain real estate in the town of Kimball, in McDowell County, deeming it to have been made with intent to hinder, delay and defraud them.

The grounds of demurrer to the bill, which the court overruled, were, (1), lack of sufficient allegations of fraud, and, (2), non-joinder of co-debtors of the defendant Chase.

As the bill distinctly alleges the conveyance was voluntary and without legal consideration and that the indebtedness, or part of it, existed at the date of the conveyance, and also charges intent on the part of the grantor, in making the conveyance, to hinder, delay and defraud his creditors and especially the plaintiffs, and avers notice of such intent on the part of Chase's wife, the grantee, the first ground of demurrer obviously fails. It would be a waste of time to cite authority for a proposition so elementary as this. Nor is the other objection well founded. Though there is authority to the

contrary, *Oliphant* v. *Hartley,* 32 Ark. 465, *Bank* v. *Landauer,* 68 Wis. 44. the weight of authority throughout the country excuses non-joinder of co-debtors, in a proceeding for relief from a fraudulent conveyance made by one of them. *Tabb* v. *Hughes,* 3 S. E. 148; 20 Cyc. 715; *Quinn* v. *People,* 146 Ill. 275. Though *Core* v. *Cunningham,* 27 W. Va. 206, does not assert this proposition, the general rule there declared seems to embrace it. The object of the suit is to get rid of a fraudulent conveyance. The conveyance is the wrong complained of, and nobody but the grantor and grantee are interested in the question. Though not wholly foreign to it, the right of contribution among the debtors is a separate and distinct matter, in which the plaintiffs have no interest, and it may be settled without litigation. It is manifestly collateral to the subject matter of the bill, and persons interested in such a liability or question need not be made parties. *Mitchell* v. *Chancellor,* 14 W. Va. 22, 27; *Austin* v. *Richardson,* 1 Gratt. 310.

The three complaining creditors, Graham Grocery Co., First National Bank of Welch and Fidelity Banking and Trust Co., all united in the bill. The Graham Grocery Co. is the holder of a note for $295.31, signed by John R. Black, dated March 18, 1911, payable, four months after date, to the order of the Bank of Graham, at the office of discount and deposit of the Fidelity Banking and Trust Co., and irregularly endorsed by C. B. Chase, W. H. Show and S. K. McFarland. The National Bank of Welch holds a note for the sum of $1600.00, signed by Black and Show, dated March 4, 1911, and irregularly endorsed by Chase and McFarland. The Fidelity Banking and Trust Company hold a note for $1767.50, signed by all the parties as makers and dated March 4, 1911.

The bill alleges that all the notes held by the plaintiffs were given in renewal of older notes executed originally before the date of the conveyance, September 12, 1908, and the proof shows the note held by the Fidelity Banking and Trust Co. was given in lieu of notes bearing dates earlier than that of the conveyance, but the debt due the Graham Grocery Co. seems to have been incurred after the date of the deed. The note held by the First National Bank of

Welch, was given in part renewal of a note for $2500.00, exe-cuted after the conveyance. Prior to May 1, 1908, all of these parties and three others, W. C. Miller, C. E. Miller and L. H. Miller, were stockholders in a corporation known as the Miller Mercantile Company. On or about said date, the Miller Mercantile Co. was succeeded by the Enterprise Mer-cantile Co., the stockholders therein being the same as in the other except the Millers, who sold their stock to the other stockholders of the Miller Mercantile Co. and retired from the business. For their respective interests, the other stock-holders gave them their notes, one for $547.29 to C. E. Miller, one for $678.25 to W. C. Miller, and one for $447.67 to L. H. Miller, all of which were dated May 12, 1908. At the date of the dissolution of the Miller Mercantile Co., an out-standing note for $1500.00 made by it and endorsed by all of the stockholders of the corporation, was held by the Fidel-ity Banking and Trust Co. Between that date and May 16, 1910, this note was largely paid off, and on May 16, 1910, the Miller notes and the balance due on the $1500.00 note were all combined into the one for $1767.50, above described. The $2500.00 note was made to obtain money used by the Enterprise Mercantile Co., in discouning its bills.

Though the principal of subrogation no longer avails a subsequent creditor, in an attack upon a conveyance, *Edwards Manufacturing Co.* v. *Carr*, 65 W. Va. 573, *Greer* v. *O'Brien*, 36 W. Va. 277 and *McCue* v. *McCue*, 41 W. Va. 151, the ex-isting indebtedness must be paid in the usual course of busi-ness not merely changed in respect of form.

The three notes given to the Millers for their stock, on which Chase and others were liable, as makers or endorsers, have never been really paid. He and his co-debtors, by the execution of a new note, merely changed the character of the indebtedness, by the execution of a single note, in lieu of three, to another party as creditor. In *Edwards Manu-facturing Co.* v. *Carr*, the existing indebtedness had been paid off in the usual course of business and new debts, founded upon new considerations, had been subsequently made. The same thing had occurred in *Greer* v. *O'Brien*. In that case Judge LUCAS, delivering the opinion of the court, said the husband had divested himself of no property theretofore in

his possession, except in the usual course of business, and the record disclosed payment of his existing debts in the same way. Here the antecedent debts have not been paid in any real or substantial sense of the term. Though the original notes were technically extinguished and the payees thereof satisfied, nothing more has occurred than the mere substitution of one creditor for another, and one note for three. That is not payment within the meaning of the decisions relied upon. As to the existing indebtedness, the deed is conclusively fraudulent and void.

To obtain relief from the conveyance and charge their debts on the property, it was incumbent upon the subsequent creditors to establish actual fraud therein, but proof of intent, in the making of the deed, to defraud existing creditors vitiates it as to subsequent creditors. This is the plain import of the terms of the staute. Section 1 of ch. 74 of the Code; serial sec. 3829, declares every gift, conveyance, assignment, transfer of, or charge upon, any estate, real or personal, with intent to delay, hinder or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, void as to such creditors, purchasers or other persons, their representatives or assigns. This is general and applies to every gift, conveyance, assignment, transfer, or charge made with such intent. It is qualified and limited by the second clause, in favor of purchasers for valuable consideration. As against them, the fraud in the transaction does not vitiate it, unless such purchaser had notice of the fraudulent intent of the grantor. This clause does not save a mere volunteer, a person to whom a conveyance has been made without the payment of any consideration. The general declaration is that fraud in the transaction, any fraud, fraud on the part of the grantor alone, vitiates, and the only limitation upon its operation is the saving in favor of purchasers for value and without notice of the fraud. There is a further saving in sec. 2 of ch. 74 of the Code, serial sec. 3830, but not as against fraud. That section does not deal with fraud at all. It deals only with purely voluntary transfers, gifts and conveyances, on the one hand, and, on the other, with preferences by insolvent debtors. It makes a merely voluntary conveyance, not a

fraudulent one, nor one both voluntary and fraudulent, good as against subsequent creditors, and vitiates it only as to existing creditors. It says a voluntary conveyance shall not be void, merely because it is voluntary, as to creditors, or purchasers who shall have purchased after it was made. If, in addition to lack of consideration for the conveyance, there was intent on the part of the grantor to defraud his creditors, it is not merely voluntary. It is fraudulent as well as voluntary, and, therefore, falls under the condemnation of sec. 1, ch. 74, and is void as to all creditors, subsequent as well as existing, unless the grantee is a purchaser for value and without notice of the fraud. .

Omission to make any saving in favor of a volunteer, for lack of notice, is justified on the ground that he parts with nothing of value. He gets something for nothing. He becomes a sort of depositary of the property of the grantor, whose sole purpose is to prevent it from falling into the hands of his creditors. He undertakes to hold the property which came to him without consideration and so attempts to defeat the rights of creditors. In so doing, he obviously makes' himself a party to the fraud. There is no reason in logic, morals, equity or justice, why he should be permitted to withhold the property from the creditors, because he had no notice of the fraud. His' retention of it, after such notice, is a virtual ratification or adoption of the fraudulent act. Once proved the fraud is inherent in the thing he accepts, wherefore his acceptance or retention amounts to participation in the fraud. Accordingly this court has held it immaterial whether a mere volunteer had notice of the fraud on the part of the grantor or not. *Laidley* v. *Reynolds,* 58 W. Va. 418; *Duncan* v. *Cuttler,* 24 W. Va. 630; *Mahew* v. *Clark,* 33 W. Va. 387; *Conaway* v. *McCann,* 30 W. Va. 200. This view was expressed by Chief Justice Marshall, in *Sexton* v. *Wheaton,* 8 Wheat. 229, in the following terms: ''A wife who is herself the instrument of deception, or who contributes to its success by countenancing it, may with justice be charged with the consequence of her conduct.'' Analysis of the many cases reviewed by Judge JOHNSON in *Lockhard and Ireland* v. *Beckley,* 10 W. Va. 87, clearly shows it is unnecessary to

prove notice, on the part of the grantee, of the fraud of the grantor in a fraudulent and voluntary conveyance.

Some of the observations made in *Edwards Manufacturing Co.* v. *Carr*, 65 W. Va. 673 seem to have been misapprehended by the counsel for the appellants. For the most part, they relate to the pleadings, the bill having charged fraud and notice thereof and both defendants having denied it. Of course, an admission of fraud in the pleadings, would have been fatal. Then there was a subsequent transaction in which Mrs. Carr had participated, but it was held that, if there was any fraud in it, she had had no knowledge of it. Fraud in that, if established, might have been evidence of fraud in the previous transaction, affecting her property. Hence it was important to inquire whether there was or not, and, if so, whether she knew it. Respecting the charge of fraud in the transaction between the husband and wife, the conclusion of the court was stated in the following terms: "Notwithstanding this, all of the indebtedness existing at the time of the donation made to his wife has been paid. He continued to do business, contracting new debts and paying old ones. It argues intent on his part to continue in business, not to withdraw what property he had from the reach of his creditors and quit, and tends to repel the charge of fraud." This necessarily implies lack of fraud on his part, which, if established, would have been sufficient. The principles underlying the decision were declared in *Greer* v. *O'Brien* and in *McCue* v. *McCue*, neither of which puts in the requirement of notice to the wife, when she is a mere volunteer. *McCue* v. *McCue* is entirely consistent with the conclusion herein stated. It says the impeaching creditor must cause it in some way to appear that the voluntary conveyance was made or caused to be made with some dishonest purpose.

In *Edwards Mfg. Co.* v. *Carr*, part of the transactions attacked were more than five years old. Such of the observations therein made, respecting notice to the grantee, as applies to them, are founded upon a principle declared in *Laidley* v. *Reynolds*, 58 W. Va. 418 and *Scraggs* v. *Hill*, 43 W. Va. 162, holding that, in an attack upon a voluntary conveyance, after five years, upon the theory of fraud in addition to lack of consideration, the plaintiff must prove actual fraud on

the part of the grantor known to the grantee and participated in by him.  As the attack upon the conveyance involved here was made within five years from its date, neither the statute of limitations nor these decisions construing it have any application.

Being liable with others for nearly $1700.00, purchase money of stock in a mercantile company, Chase conveyed his property in Kimball, McDowell County, to his wife, without consideration, by a deed dated, Sept. 12, 1908.  He then owned other real estate in Jefferson County, which he claims was worth $3000.00 or $3500.00, all of which, except a small lot worth about $100.00, he likewise conveyed to his wife later, probably less than two years afterward.  Between the dates of these conveyances, he had executed another note for $2500.00.  Show says he exhibited to him, shortly before the conveyance of the Jefferson County property, some sort of a paper purporting to be a charge upon it.  These circumstances, independent of the admissions relied upon, are sufficient to sustain the finding of fraudulent intent in the conveyance of the Kimball property.  Chase was then liable for some debts which he made no effort to pay.  He contracted others and then conveyed away the balance of his property, leaving nothing but a lot worth $100.00 and his earnings as a laborer to which his creditors could resort.  Though these transactions covered a period of about two years, they were all intimately connected and may well be considered together on the question of his intent.  The property first conveyed was that most accessible to his creditors.  At the time of that conveyance, he was relying upon some sort of an arrangement made for protection of his other property.  Losing faith in the scheme he had devised for its protection, he voluntarily conveyed that property, and so obstructed the rights of all of his creditors.  His conduct as a whole was clearly inconsistent with an honest intention toward any of them.

The decree will be affirmed and the cause remanded for execution thereof.

*Affirmed and Remanded.*