WILLIAM L. KELL, *Trustee, etc. v.* ARTHUR A. CUMBY *et al.*

(No. 9439)

Submitted April 7, 1943. Decided June 8, 1943.

Fox, JUDGE, and RILEY, PRESIDENT, dissenting.

*Arthur F. Kingdon,* for appellant.
*Harold F. Porterfield* and *James S. Kahle,* for appellees.

LOVINS, JUDGE:

Certain phases of this cause were considered on the former appeal. 124 W. Va. 283, 20 S. E. 2d 461. The pleadings and facts as then developed were detailed in the opinion and require no restatement. The decree of the trial chancellor was reversed, it being held that the relief granted in the court below was different from that sought by the prayer of the bill of complaint, and the cause was remanded with right to amend.

The relief sought in the plaintiff's original bill and considered when the cause was formerly here on appeal was based on the contention that the conveyance made

to the infant, Ruth Cumby, now Ruth Cumby Kinder, was fraudulent, and was executed for the purpose of hindering, delaying and defrauding the creditors of the grantee's father, Arthur Andrew Cumby. The prayer of the original bill was for a decree adjudging the father to be the owner of the land so conveyed and the improvements thereon; that they be subjected to plaintiff's claim; and for general relief.

As noted in the former opinion, the allegations in the original bill were not specific, fraudulent conduct on the part of Cumby and his daughter not being sufficiently charged. It was held upon the record, as it then was, that the proof did not disclose circumstances which would warrant the conclusion that the property under consideration was conveyed to the daughter as trustee for the father, and that there was no showing of fraud or questionable conduct connected with such conveyance. It should be stated that there is nothing in the present record which requires any change in that conclusion.

In the former opinion, after reaching the conclusion mentioned above, it was stated: "The only other theory upon which we believe that the property of Ruth Cumby might possibly be charged with the cost of materials supplied by the lumber company is that she accepted a voluntary contribution of the materials used, made void by Code, 40-1-3, so that the gift may be followed within five years."

On the remand of the cause to the circuit court the plaintiff filed two amended and supplemental bills. In the first he makes the following allegation: "Plaintiff alleges that the erection of said improvements on the land of his infant daughter by the said Arthur Andrew Cumby constituted a voluntary transfer and gift to said daughter and that he is advised therefore that the value of said improvements is an asset of the estate of Arthur Andrew Cumby, bankrupt, and that the real estate aforesaid is chargeable with the value of the said improvements for the benefit of the aforesaid creditors, the said Ruth Cumby Kinder having paid nothing whatsoever for said

improvements either in money or any other form of consideration". A demurrer to the first amended and supplemental bill was sustained, possibly upon the ground, among others, that there was no allegation of any acceptance of the gift alleged. Thereupon, the plaintiff filed a second amended and supplemental bill in which he alleges the acceptance of such gift by Ruth Cumby Kinder. A demurrer was interposed to the second amended and supplemental bill which was sustained, and the plaintiff declining further to amend, the suit was dismissed. From the decree dismissing the cause, plaintiff appeals.

Two questions arise on this appeal: (1) Are the pleadings sufficient; and (2) may the improvements placed on the land of Ruth Cumby Kinder by her father be subjected to the satisfaction of the father's debts?

The original bill of complaint and the two amended and supplemental bills do not allege sufficient facts to constitute fraud on the part of the father or the daughter, and no relief can be granted to the plaintiff predicated on fraud in the transfer from the father to his daughter, Ruth Cumby Kinder. However, the original and two amended and supplemental bills, when read together, sufficiently charge a voluntary transfer. Under Code, 40-1-2, the word "transfer" includes a gift. The gift from the father to the daughter and acceptance by the latter are sufficiently pleaded in the original and supplemental bills of complaint.

There is authority for the proposition that where a person places improvements upon the land of the wife or other close relative in fraud of his creditors, the real estate improved may be charged therewith to the extent that the value thereof is enhanced thereby at the suit of the creditor of the person making such improvement. In most instances our cases cover situations where the husband or father used his means to improve the property of his wife or child. As illustrative, see *Kanawha Valley Bank* v. *Wilson*, 25 W. Va. 242; *Burt* v. *Timmons*, 29 W. Va. 441, 2 S. E. 780, 6 Am. St. Rep. 664; *Humphrey* v. *Spencer*, 36 W. Va. 11, 14 S. E. 410; *Handley* v. *National*

*Loan & Investment Co.,* 44 W. Va. 450, 29 S. E. 1002; *Vandervort* v. *Fouse,* 52 W. Va. 214, 43 S. E. 112; and the late case of *Ravenna Furnace & Heating Co.* v. *Cotts,* 124 W. Va. 750, 22 S. E. 2d 371. Whether this rule should apply to cases where infants' lands are involved is an unsettled question in this State. In *Handley* v. *National Loan & Investment Co., supra,* improvements had been made upon the property of an insane wife, and the Court by *dictum* indicated that the rents and profits of such property might be subjected to the payment of the cost of such improvement. Such relief was not granted in that case because the pleadings did not justify the same.

At the time of the improvements on the property of Ruth Cumby Kinder, in 1937, she was seventeen years old, and may be said to have reached the age of discretion. Had she, in fact, participated in the fraudulent transaction, through which the value of her property was enhanced, she would have been estopped to rely on her infancy to escape the consequences of her act. In *Stallard* v. *Sutherland,* 131 Va. 316, 108 S. E. 568, 570, 18 A. L. R. 516, it was held that where an infant "fraudulently represents that he is of full age, or actively conceals his minority and the other party is thereby induced to execute a contract, then it will be held that the infant will be estopped in equity by his own fraud to avoid the contract, on the ground of infancy, to the prejudice of the other contracting party". But no such conduct is here alleged, and it does not appear that Ruth Cumby Kinder participated in any way in the purchase of the material from the lumber company. "A mere volunteer in a fraudulent conveyance, whether an infant or adult, participates in the fraud of the grantor, by his acceptance of the benefit of the conveyance". *Donehoo* v. *King,* 83 W. Va. 485, 98 S. E. 520, 521; *Grocery Co.* v. *Chase,* 75 W. Va. 775, 780, 84 S. E. 785, 17 A. L. R. 723. However, it is charged in the second amended and supplemental bill that she accepted a gift from her father, and to that extent it may be said that she acquiesced in allowing her property to be improved.

There is no question of fraud or fraudulent conduct involved herein. Code, 40-1-3, provides, in part, as follows: "Every transfer or charge which is not upon consideration deemed valuable in law shall be void as to creditors whose debts shall have been contracted at the time it was made; but shall not, upon that account merely, be void as to creditors whose debts shall have been contracted, * * * after it was made; and though it be decreed to be void as to a prior creditor because voluntary, it shall not for that. cause be decreed to be void as to subsequent creditors or purchasers." The foregoing statute, with slight changes in phraseology, has been a part of the statutory law of this State since its formation. Section 2, Chapter 118, Code of Virginia, 1849. The outstanding characteristic of the statute makes a transfer which is without consideration and prejudicial to prior creditors void, but such is not true as to a subsequent creditor. The transfer is not set aside because of fraud, but for the reason that the transfer is voluntary. It was held by this Court in the case of *Greer* v. *O'Brien,* 36 W. Va. 277, 15 S. E. 74 referring to the statute above quoted, that "Since the enactment of said section and chapter, voluntary conveyances are void as to prior creditors not because they are fraudulent, but because they are voluntary and because of the consequent subordination of the right of the donee to that of all prior creditors". The actual intent of the parties is immaterial. The gift is void, in so far as it prejudices the rights of creditors existing at the time of the gift, when lack of consideration deemed valuable in law is established. *Manufacturing Co.* v. *Carr,* 65 W. Va. 673, 64 S. E. 1030. The transfer may be without regard to the amount of the debts, the value of the property conveyed, the motives actuating the donor or his condition at the time of the transfer. *Lockhart & Ireland* v. *Beckley,* 10 W. Va. 87. See *Hunters* v. *Waite,* 3 Gratt. 26, for a history of the development of the principle inherent in the statute.

It is not denied that the materials used in making the improvements on the land of the infant, Ruth Cumby

Kinder, were purchased by her father; that he contracted for the labor performed by George Carter and C. T. Bales; and that she paid no consideration for such materials and labor. (It does not appear whether George Carter and C. T. Bales were creditors prior or subsequent to the transfer.) Likewise there is no denial that the debt of the lumber company was in existence prior to the time that the materials purchased from it were affixed to the structure then on the land. As to the lumber company the transfer of such materials was void, made so by statute. No fraudulent intent or act on the part of Cumby or his daughter was necessary to make the transfer void. In contemplation of law as to prior creditors of her father, Ruth Cumby Kinder never owned the improvements made by him, the bar of the statute preventing her from taking an indefeasible title thereto within the five-year period prescribed by statute. Where improvements are placed on the land of another in fraud of creditors, we do not doubt that such transfer may be set aside on the ground of fraud, and we know of no reason why a voluntary transfer, designated as void by the express language of the statute, cannot be treated likewise.

It should be borne in mind that we do not subject the property of Ruth Cumby Kinder to the satisfaction of the demands of her father's prior creditors, but Code, 40-1-3, does permit such creditors to resort to property which he attempted to transfer to her for the satisfaction of their debts. The transfer is rendered ineffectual when attacked within the five-year period provided by statute.

The difficulty arising in subjecting the property of Cumby to the satisfaction of his debts arises by reason of the fact that the materials and labor have become an integral part of the land and building belonging to Ruth Cumby Kinder. We know of no way in which this property can be separated in kind from the property of the infant without doing damage thereto. The value of the land and building prior to the time Cumby made improvements thereto in the year 1937 can be ascertained, and

when such value is determined Ruth Cumby Kinder is the sole owner thereof. The value of the entire property, after completion of the improvements made by Cumby, can likewise be established, and thereafter by a simple mathematical process the value of Cumby's interest in his daughter's property may be determined. The respective estates of the father and daughter can be segregated by sale and division of the purchase money or the trial chancellor in his discretion may cause the same to be rented and apply a portion of the rent in its proper ratio to the satisfaction of the plaintiff's demands. The proper ratio of the rent to be applied thereto is that portion of the rent allocable to the improvements made by Cumby. The residue of the rent allocated to the real estate before it was improved belongs to Ruth Cumby Kinder. The well known duty of a trial chancellor to protect and conserve the rights of an infant will suffice to fully preserve the rights of Ruth Cumby Kinder as to the land and improvements prior to the time the additions were made by her father.

It is apparent that the provisions of Code, 40-1-3, were not applied by the trial chancellor. The final decree herein is erroneous in that it makes no distinction as to a voluntary transfer made without fraud or fraudulent intent, and to the prejudice of creditors whose debts had been contracted when the transfer was made.

The decree of the Circuit Court of Mercer County is reversed and the cause remanded, with direction to ascertain the value of the improvements and additions made to the land belonging to Ruth Cumby Kinder and when the value of the improvements made in 1937 is ascertained that such value only be subjected to the satisfaction of Arthur Andrew Cumby's creditors whose debts had been contracted at the time the transfer to his daughter was made; and that the remaining value of the property be allocated to her. No costs will be assessed against the infant or her property.

*Reversed and remanded with direction.*

Fox, Judge, dissenting:

I cannot concur in the majority opinion in this case, for the reason that I think it opens the door for the dissipation of the property of infants. Believing that a court of equity should protect the estates of infants, I do not think it should subject their property to sale except for the limited situations where necessaries are furnished, preservation of property involved, or fraud practiced by infants who have reached the age of discretion, or for other torts.

I agree, of course, that an infant should not be used as the medium by which a fraudulent parent, other close relative, or any other person, seeks to evade the payment of debts, whether through a fraudulent conveyance, or a transfer without consideration. Under Code, 40-1-3, a voluntary transfer of specific property to an infant, where that property can be segregated and reached without affecting the infant's other estate, can and should be set aside. But to my mind, to say that the purchase of property by a parent from a third party on his own credit, at a time when the parent was employed, and his inability to pay not shown, and the use of that property in the improvement of an infant's estate in circumstances which make it impossible to segregate the same from the estate as it existed before the improvements were made, creates a lien or charge against said estate, presents quite a different proposition. If that can be done, then an infant's property is never safe from the machinations of an improvident parent. The majority opinion suggests that the value of the infant's estate before the improvement, and the value of the improvement to the extent of the enhancements, can be ascertained, and the property can then be rented or sold to cover the expense of the improvements, to the extent the value of the infant's estate was thereby enhanced. From an equitable standpoint there is merit in this suggestion, so long as the property is only rented; but if the property should be sold, as in this case, I think, it would have to be, we are met with

the proposition that, being a forced sale, the property is not likely to bring its true value, and the infant's estate, as it existed before the improvements, would be thereby sacrificed. Under the majority opinion, I know of no way an infant's estate can be protected against the conduct of a parent or other person who, on his own credit, purchases property and uses the same in improving the infant's estate.

In this case the infant, herself, could not have bound her estate by the same character of contract which her father entered into. If she, being of the age of discretion, had gone to Seyler Lumber Company, and without misrepresenting her age, or engaging in any other fraudulent practice, had purchased the lumber and other supplies in question, she would not have been bound by the contract; nor could the lumber company have protected itself by filing a mechanic's lien on the property improved. *Planing Mill Company* v. *Aldredge,* 63 W. Va. 660, 60 S. E. 783, 15 L. R. A. (N. S.) 1159, 129 Am. St. Rep. 1035, 15 Ann. Cas. 1089. This being true, can a third party, without any fraudulent participation on the part of an infant, create a charge which she could not by her own contract create? I do not think Code, 40-1-3, should be so construed and applied.

As stated in the majority opinion, fraud on the part of the infant is neither alleged nor proven. In *Williamson* v. *Jones,* 43 W. Va. 562, 27 S. E. 411, 412, 38 L. R. A. 694, 64 Am. St. Rep. 891, this Court held: "An infant of years of discretion, by intentional fraudulent conduct, will be barred, under the doctrine of estoppel *in pais,* from asserting her title to either real or personal property against one misled thereby". But in *Headley* v. *Hoopengarner,* 60 W. Va. 626, 55 S. E. 744, we held: "While the doctrine of estoppel *in pais* applies to infants of years of discretion, for intentional fraudulent conduct, in favor of one who is misled thereby, yet estoppel by contract and for mere silence does not apply to them". In *Floyd* v. *Page,* 129 S. C. 301, 124 S. E. 1, it was held that "The only theory on which doctrine of estoppel is ever applicable to such

transactions of infants is that conduct relied on constitutes tort, not connected with the contract for which infant might be held civilly liable". And it was further held that to exercise the doctrine of estoppel against an infant it must appear that the contract upon which the estoppel was sought to be invoked was intentional and fraudulent; that the infant was of years of discretion; and that such conduct must have been relied upon by the other party to the transaction to his detriment. In *Saum* v. *Coffelt,* 79 Va. 510, it was held: "An infant can only be held liable for a fraud or a tort which is wholly independent and irrespective of the contract, express or implied".

To sum up the whole matter, if this were a case where the father had purchased property on his own credit, and then made a gift thereof to his daughter, and that property could be reached in its original form without in any wise affecting any estate which the infant might possess, I would say that Code, 40-1-3, applies, and that the property could be subjected to sale for the original purchase money. That is not the case before us. Here, the lumber and supplies purchased by Arthur Andrew Cumby were used in the improvement of his infant daughter's real estate, and I think it clear that, when so used, it became a part of the infant's estate in such a way as made it impossible to segregate it from the property improved, or subject to sale the property so used in such improvement, and became an integral part of the infant's estate, which the father's creditor could not follow. It can only be recovered at the expense of the infant's interest in the estate prior to the date when the improvements were made. I think this creates a special situation which cannot be reached by the application of Code, 40-1-3, and I would sustain the decree of the Circuit Court.

I am authorized to say that Judge Riley concurs in this dissent.