No. 17,963.

DINKSEY GREEN *v.* KATHLEEN MAY JONES, ETC.
(319 P. [2d] 1083)

Decided December 23, 1957.   Rehearing denied January 27, 1958.

Mr. LOWELL WHITE, Mr. WALTER A. STEELE, for plaintiff in error.

Mr. DUANE O. LITTELL, Mr. KENNETH D. SUTTERLIN, Mr. NICHOLAS E. DARROW, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

PLAINTIFF in error was defendant in the trial court and we will refer to her as defendant; defendant in error, plaintiff in the trial court, we refer to as plaintiff, or Kathy.

Plaintiff, two years of age at the time of the injuries complained of, through her father and next friend, filed her complaint against the defendant, alleging two grounds upon which she seeks recovery. In her first claim, she sought to recover for personal injuries suffered as a result of the alleged negligence of the defendant in the operation of an automobile; her second claim alleged that defendant's negligence consisted of wilful and wanton conduct. Defendant answered and set forth

as defenses: (1) a general denial; (2) unavoidable accident; (3) plaintiff was a guest of defendant at the time of her injuries, and (4) the complaint fails to state a claim upon which relief can be granted.

Trial was to a jury which returned a verdict in favor of plaintiff upon which judgment was entered, and the defendant is here on writ of error.

Though there may be some slight inconsistencies in the testimony, there is no real conflict therein. The evidence shows that Kathy and her four older brothers and sisters were left by their parents in charge of defendant, who had from time to time taken care of the children while their mother and father worked. The children had spent the night preceding the accident with the defendant, Kathy's maternal grandmother. On the morning of the accident the defendant had gotten the two children of school age off to school and was going to take the three children of preschool age to a baby sitter retained by Kathy's mother; the defendant directed two of the children to get in the car and they did get in the front seat of defendant's 1947 two-door sedan; the defendant picked Kathy up and put her in the front seat next to defendant, the other two children being on Kathy's right, and she herself got in the car behind the wheel and started to back out of a rather long driveway with a circular portion where the car could be turned around. As defendant backed out, Kathy climbed over the other two children and was next to the right door as defendant backed out and started to make the turn at this circle, the door came open and Kathy fell out and was run over by the right front wheel and had her left ear and part of her scalp completely torn off and irretrievably lost. She suffered other serious injuries also, for which the jury awarded her damages in the sum of $7500.00. Defendant well knew that the right front door of this car was defective and often flew open and usually did so when making a curve or turn. Though defendant knew of this defect and knew Kathy had

climbed over the other two children and was next to this defective door, she turned her head away from Kathy, looked over her left shoulder and backed out of the driveway and was on the circular part of the driveway when the door opened and Kathy fell out and was injured as set forth above.

There was uncontradicted evidence that Kathy's mother had given the defendant a check for $70.00 and had also paid a $15.00 debt owing by defendant. The evidence as to just why these amounts were turned over to defendant is not clear; nor is it clear just what the $70.00 should cover — whether food, care, services, or gas for transportation. The defendant testified that:

"It was given to me in regard to my pay for services, for the gas to take them to Mrs. Hunt's, anyway I might see fit to use it, to cover my household expenses, etc."

Most of the argument in the trial court and also in this court deals with the question as to whether the facts presented with reference to payment were sufficient to submit to the jury the question of whether Kathy had been removed from the inhibitions of the guest statute by " * * * payment for such transportation * * *."

█ The mother, father and grandfather of Kathy all testified in her behalf; much of their testimony consisted of a recital of what the defendant had told them concerning the accident, the defects in the car, her neglect in failing to watch for Kathy and her understanding of the purpose of the $70.00. Defendant's counsel objected to this testimony on the ground that it was hearsay. The trial court properly held that though hearsay, it consisted of admissions against interest and was admissible under a well established exception to the hearsay rule.

█ Plaintiff called the defendant under the statute for cross-examination and experienced little difficulty in eliciting from defendant admissions which established negligence on the part of the defendant. When called by her counsel to testify in her own behalf, defendant

readily testified as to her various acts of negligence which were the proximate cause of plaintiff's injuries. At this point defendant's counsel undertook to discredit his client's testimony by cross-examination. Objection to this was properly sustained. Counsel then made a tender of proof and offered to show by two witnesses that defendant, shortly after the accident, had made written statements concerning the accident and alleged payments for transportation, which were at material variance with her testimony from the witness stand; this offer was rejected on the ground that counsel could not seek to discredit or impeach his client. It seems elementary that counsel, having accepted and continued in the employment of defendant, is in no position to impeach or discredit his client. To do so would be to act beyond and above the call to duty and might well be considered, though we do not determine the question, as being beyond the scope of his employment. Reason dictates that it is the duty of counsel during the period of his employment to seek to sustain, rather than destroy, the position of his client.

All of the issues and arguments concerning payment for transportation, wilfulness and wantonness, and the propriety of instructions touching these questions, we consider irrelevant and for the reason that Kathy, age two, did not and could not attain or occupy the status of a "guest," as contemplated by the legislature in adopting C.R.S. '53, 13-9-1, as follows:

"No person *transported* by the owner or operator of a motor vehicle *as his guest,* without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication, or by negligence consisting of a willful and wanton disregard of the rights of others. * * *." (Emphasis supplied.)

This statute is in derogation of the common law rule

which makes the operator answerable in damages for injuries suffered by an occupant of his car arising out of and proximately caused by the operator's failure to exercise ordinary care. Such being the case, the statute must be strictly construed.

To achieve the status of "guest" there must be an invitation, expressed or implied, and an acceptance, formal, informal, or by act or deed. Kathy, because of her tender years, was incapable of accepting; the defendant recognized this fact and, without consulting Kathy, picked her up and plunked her down in the front seat. A strange invitation. How did Kathy accept?

"Kathy was pouting at me. She didn't want to go. She wanted to stay home * * *."

We take judicial notice of the fact that a two-year-old child is incompetent to accept or reject an invitation. The status of "guest" under the statute is acquired only by knowingly and voluntarily accepting the invitation to become so. Certainly a kidnapped person does not attain the status of guest; a prisoner, being transported against his will, is not a guest.

Interwoven in our guest statute and decisions construing the same we find the doctrines of "assumption of risk," "contributory negligence," "failure to extricate oneself from apparent danger," etc., none of which can with reason be applied to Kathy.

In *Dobbs v. Sugioka*, 117 Colo. 218, 185 P. (2d) 784, this court, in holding that plaintiff was not a "guest," said, pages 221-222:

"The foregoing authorities should be considered in the light of two legal propositions here applicable and for our present purpose these are thus correctly and briefly stated: 'One who suffers an injury to his person or property because of the negligent act of another has a right of action therefor at common law.' 45 C.J., p. 1045, section 601. 'All statutes in derogation of the common law or common rights are to be construed strictly.' 59 C.J., p. 1124, section 665.

"At common law plaintiff's cause of action would not depend on proof of gross negligence. Since the guest statute deprives one within its terms of a right theretofore existing it is in derogation of the common law and should be strictly construed. Hence one relying on the guest statute has the burden of clearly establishing that claimant was such guest. Our inevitable conclusion here is that plaintiff was not a guest."

Our guest statute has been the subject of much discussion in many cases that have been presented in this court for review, and there have been many pronouncements touching on the question as to whether certain persons riding with others occupy the position of "guest" at the time of being injured. None has directly dealt with the question herein discussed.

In *Wilson v. Hill*, 103 Colo. 409, 86 P. (2d) 1084, this court, in defining the duties of a "guest" under certain circumstances, said, at page 415:

" * * * If a guest knows that danger may follow the operation of the car because of the physical incapacity of the driver, as plaintiff here alleged and testified was her conviction, it is the duty of the guest to take such measures as may be open to him to avoid the threatened injury and he is guilty of negligence if he fails to so do. If the discharge of such duty can only be met by leaving the vehicle at the first available opportunity, if such is offered, the passenger may be deemed guilty of contributory negligence if he elects to remain in the car, but the passenger's duty to leave the automobile must be judged in the light of all the surrounding facts and circumstances, such as the time of the day or night, the place and surroundings, the availability of other means of transportation and other pertinent considerations of similar nature. * * *."

The court was speaking of a guest — certainly not about Kathy.

In *United Brotherhood v. Salter*, 114 Colo. 513, 167 P.

(2d) 954, this court, in further outlining the duties of a guest, said:

" * * * Where one becomes a guest and imprudently enters a car with knowledge that the driver is so under the influence of intoxicants as to tend to prevent him from exercising the care and caution which a sober and prudent man would employ in the operation and control of the car, the guest is barred from recovery by reason of his contributory negligence, and as having assumed the risk involved. * * *."

This language is applicable to "guests" — not Kathy.

In *Ling v. Pease,* 123 Colo. 518, 232 P. (2d) 189, this court said, at page 521:

"It is not questioned that there is a duty on the part of an invited guest to warn the driver of an automobile of known impending danger and protest against driving in a reckless and dangerous manner to the extent that a reasonably prudent person would do under like circumstances, and also that if he fails to do so, he is precluded from recovery for injuries resulting from an accident."

To seek to apply this language to Kathy presents insurmountable difficulties.

In *Morrow v. Whiteley,* 125 Colo. 392, 244 P. (2d) 657, this court said, at pages 399-400:

" * * * A careful study of these decisions convinces us not only that guests but 'hitchhikers' and 'bums' as those terms are used in Dobbs v. Sugioka, supra [117 Colo. 218, 185 P. (2d) 784], are not to be injured and permanently crippled while riding in an automobile operated by an intoxicated driver unless the guest, 'hitchhiker' or 'bum' voluntarily assumes the risk and knowingly undertakes the hazard of riding in an automobile operated by such a driver. * * *."

Kathy was neither "guest," "hitchhiker" or "bum" and was incapable of assuming any risks or hazards.

In *Haller v. Gross,* 135 Colo. 218, 309 P. (2d) 598, this court said:

"Plaintiff, while legally a minor, was nineteen years

old and possessed of the usual and ordinary faculties of an adult person and it may be assumed that she was fully capable of knowing, or could anticipate, danger that might follow from the operation of the car due to the physical incapacity of the driver, and she made no effort to avoid the likelihood of the accident and it must be said that she assumed the risk, which bars her recovery. * * *."

Conversely, Kathy was not possessed of any of the faculties of an adult person, was incapable of knowing or anticipating danger or avoiding the same, incapable of assuming the risk, incapable of accepting the status of a guest.

A case in point is *Kudrna v. Adamski,* 188 Ore. 396, 216 P. (2d) 262. The opinion contains the following statement of facts:

" * * * At the time of her injury the plaintiff, Dolores Kudrna, was four years of age. The defendant is her uncle, the brother of her mother, who was killed in the accident. The automobile was owned by the child's father. An appointment had been arranged for Dolores with a doctor in Eugene, and the trip was made for the purpose of keeping this appointment. Mrs. Kudrna did not drive the car because she had no driver's license, and the defendant drove at the request of both Mr. and Mrs. Kudrna as a 'family courtesy.' En route to Eugene the right rear wheel of the car got onto the shoulder of the highway. In the driver's effort to bring it back onto the pavement the car went out of control and crashed on the other side of the road."

The Oregon statute is identical with the Colorado statute. In sustaining a judgment for plaintiff, the court said:

"Thus, the statute implies that in order to become a guest one must exercise a choice in the matter, and we think that a four-year-old child has not the legal capacity to exercise such a choice, just as he is incapable of negligence. Macdonald v. O'Reilly, 45 Or. 589, 599,

87 P. 753. See Fuller v. Thrun, 109 Ind. App. 407, 31 N.E. 2d 670, 672, where the court, in holding that a child six years of age was incapable of being a guest, said: 'If children under seven years of age are conclusively presumed to be incapable of committing crime and if they are conclusively presumed to be incapable of contributory negligence, it would seem that this age limit should also be adopted in determining whether or not a child of tender years can be a guest.'

"In any event a four-year-old child, who enters an automobile in the custody of a parent or other custodian, does not do so of its own free will and cannot be said to have accepted an invitation to ride from the owner or operator of the car. Thus, in Hart v. Hogan, 173 Wash. 598, 24 P 2d 99, 103, a twelve-year-old girl in the custody of her mother, was held not to be the guest of the owner of an automobile, the court saying that she 'was an involuntary occupant of the automobile. She had no option other than to accompany her mother.' "

California has a statute similar to the statute in Colorado; it reads in part as follows:

"Any person who as a guest *accepts* a ride in any vehicle * * *." (Emphasis supplied.)

In *Rocha v. Hulen,* 6 Cal. App. (2d) 245, 44 P. (2d) 478, plaintiff, a five-year-old child, recovered judgment against the defendant who found the child injured and unattended and put her in his car and started to take her to the hospital; drove negligently and collided with another car, causing plaintiff injuries. The court held that plaintiff was not a guest and had not "accepted a ride" and therefore could recover on the basis of ordinary negligence. The court said, at page 482:

" * * * To be a guest one must have accepted the ride in the vehicle involved. We think this imports both a knowing and a voluntary acceptance, and does not include either involuntary or a forced ride.

*     *     *

" * * * Considering the whole section and the intent

and object to be accomplished by the Legislature by its enactment, we conclude that Elsie Rocha was neither a passenger nor a guest in the automobile driven by the appellant Hulen at the time of the accident, and at the time of receiving her injuries by reason of his negligence, but was in truth and in fact simply an involuntary occupant of the vehicle driven by the appellant.

\* \* \*

"The common-law right of having redress for injuries wrongfully inflicted, being lessened by such statutes, necessitates strict construction, and also that cases be not held within the provisions of such statutes unless it clearly appears that it should be so determined. \* \* \*."

A case exactly analogous to the case before us is *Fuller v. Thrun,* 109 Ind. App. 407, 31 N.E. (2d) 670, wherein a six-year-old girl, left in the custody of defendant for a period of two hours, was taken for a ride by defendant and injured. Pertinent parts of the Indiana statute are identical with our statute. The court said:

"It will be noted that all of these definitions contemplate both an invitation on the part of the owner and an acceptance on the part of the guest of such invitation and the hospitality and privileges thereby afforded. It is clear, therefore, that one forced against his will to ride with the driver of a motor vehicle could not be said to be riding as a guest.

"May one who is incapable mentally of accepting an invitation to ride become a guest of the operator of an automobile within the meaning of our statute? It is our opinion that this question must be answered in the negative.

\* \* \*

"It is our opinion, therefore, that the appellee on the occasion in question was not riding in the appellant's automobile as his guest. She was, however, in the appellant's custody and the appellant as owner and operator of the automobile owed the appellee a duty to exercise that care which a person of ordinary prudence

would have exercised under similar circumstances for her safety and protection * * *."

We are not unmindful of the fact that there are cases that appear not to be in accord with our resolution of this question; however, we find no case involving a child of tender years who has been held to be a guest in which any effort has been made by the court to analyze the question of who are guests.

*In Re Wright's Estate,* 170 Kan. 600, 228 P. (2d) 911, presents a real legal anomaly. A four-year-old child, taken for a ride by his grandparents, was held to be a guest within the statute which does not differ from the Colorado statute. Mr. Justice Wertz, who authored the opinion of the majority of the court, said:

"In order for appellants to predicate their cause of action on mere negligence, the burden is on them to prove that decedent's status while riding in the Wright car as a passenger was not one which would exclude recovery for mere negligence as provided in our guest statute. Appellants further contend the Legislature never intended that the provisions of the guest statute should be applicable to a four-year-old child. The weight of authority is that a minor as well as an adult can be a guest even though unaccompanied by parent or guardian, even though no consent of parent or guardian is shown. *Morgan v. Anderson,* 149 Kan. 814, 817, 89 P. 2d 866; *West v. Poor,* 196 Mass. 183, 81 N.E. 960, 11 L.R.A., N.S., 936; *Shiels v. Audette,* 119 Conn. 75, 174 A. 323, 94 A.L.R. 1206; *Audia v. DeAngelis,* 121 Conn. 336, 185 A. 78; *Langford v. Rogers,* 278 Mich. 310, 270 N.W. 692. See also 60 C.J.S., Motor Vehicles, section 399(5), p. 1017."

This same Justice Wertz (incongruous as it may seem) also authored a dissenting opinion, concurred in by Justice Smith, and said:

"I cannot agree with all that has been said in the majority opinion, which fell to my lot to write. I do not agree that it was the intent of our legislature in enacting

G.S. 1949, 8-122b, the so-called guest statute, to classify a child of tender years or a person under mental disability within the term 'guest' as defined in the majority opinion. To say that a child who has been placed by its parents in the unrestricted care of another and taken by such other for a ride in a vehicle, is a guest of the driver on such occasion, takes from the term 'guest' as used in the statute, its ordinary and well accepted meaning."

\* \* \*

" \* \* \* To me the statute implies that in order to become a guest one must exercise a choice in the matter, and I think that a four-year-old lacks the legal capacity to exercise that choice, just as it is incapable of responsibility for its torts and so forth. Surely the law should not be construed to say that these helpless children are bound by the same standards applicable to persons of mature years who have the ability and mentality to contract for transportation or to object and remonstrate to the manner in which the car is driven while riding in the vehicle under circumstances which make the guest statute applicable. \* \* \*."

While these conflicting opinions by the same justice in the same case leave us somewhat bewildered, we recognize merit and sound reasoning in the dissenting opinion, with which we find ourselves in full accord.

Counsel objected to several instructions given touching on the guest statute. In the view we take of the matter, while many of these instructions should not have been given, Kathy, not the defendant, was prejudiced thereby and Kathy is not complaining; defendant, not being prejudiced thereby, may not complain.

The judgment is affirmed.