## Richmond

JR. JEFFERSON MIDKIFF, AN INFANT, ETC. v. DONNIE GREEN MIDKIFF, AN INFANT.

April 25, 1960.

Record No. 5056.

Present, All the Justices.

The opinion states the case.

*John D. Epperly* and *W. R. Broaddus, III* (*Virgil H. Goode; Broaddus, Epperly & Broaddus,* on brief), for the plaintiff in error.

*John N. Dalton* and *James C. Turk* (*Dalton, Poff & Turk,* on brief), for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

Jr. Jefferson Midkiff, an infant 13 years of age, who sues by his uncle and next friend, T. G. Jones, filed a motion for judgment against his brother, Donnie Green Midkiff, aged 17, hereinafter referred to as the infant defendant, and William C. King, an adult, for injuries sustained while riding as a passenger in an automobile

owned and operated by the infant defendant when it collided with an automobile operated by King, alleging that the infant defendant was guilty of gross negligence and King guilty of simple negligence. A motion to dismiss the action against the infant defendant on the ground that an unemancipated infant cannot maintain an action against his unemancipated infant brother was sustained by the court below. The case against the co-defendant, William C. King, was continued. From the trial court's ruling, dismissing the action against the infant defendant and entering final judgment in his behalf, we granted a writ of error.

The sole question before us is whether an unemancipated infant can maintain an action against his unemancipated infant brother to recover damages for personal injuries resulting from the latter's act of negligence. The question presented is one of first impression in this Commonwealth.

In those jurisdictions where the question has been directly involved or alluded to it has been uniformly held, or accepted, that the fact of relationship by blood or marriage, other than that of husband and wife or parent and unemancipated child, between the tort-feasor and the injured person does not preclude the maintenance of an action. Thus, action by an unemancipated infant against his unemancipated infant brother for personal injuries is allowed. Public policy, predicted disruption of domestic peace and amicable family relationships, and the possibility of collusion and fraud provide no immunity to the tort-feasor in such cases. *Rozell* v. *Rozell* (1939), 281 N. Y. 106, 22 N.E. 2d 254, 123 A. L. R. 1015; *Munsert* v. *Farmers Mutual Automobile Insurance Co.* (1938), 229 Wis. 581, 281 N. W. 671, 119 A. L. R. 1390; *Detwiler* v. *Detwiler* (1948), 162 Pa. Super. 383, 57 A. 2d 426, 428, 429; *Emery* v. *Emery* (1955), 45 Cal. 2d 421, 289 P. 2d 218, 224, 225; 52 Am. Jur., Torts, § 97, pp. 439, 440. See also *Becker* v. *Rieck* (1959), 188 N. Y. S. 2d 724, 725, 726; Prosser on Torts, 2 ed., Domestic Relations, § 101, p. 677; Anno. 123 A. L. R. 1021; and note in 27 Mich. L. Rev. (1938-1939), p. 658.

The infant defendant concedes that all the reported cases support the general rule that an unemancipated infant can maintain an action for personal injuries against his unemancipated brother, but he, nevertheless, says that the rule should not be accepted by this court because Virginia follows the common law, under which this action is not permitted. He argues that the decisions of this court prohibiting

actions for personal injuries between husband and wife or parent and unemancipated child are applicable, and to allow the plaintiff to maintain this action would (1) be against public policy, (2) seriously disturb the family relationship and destroy the family unit, and (3) be an open invitation to fraud and collusion, particularly in automobile accident cases where the driver or owner of the vehicle is insured against liability for personal injuries.

We are not impressed with the infant defendant's argument. It is true that the common law is in force in Virginia, except where modified by statute.[1] It is equally true that in the states of New York and California, where the issue now before us has been directly passed upon in *Rozell* v. *Rozell* (N. Y.), *supra*, and *Emery* v. *Emery* (Cal.), *supra*, the common law is in force except where modified by statute. See art. 1, § 14, New York Constitution, and § 5, California Civil Code.

The infant defendant says that this action is not permitted under the common law but cites no case, and we have not been able to find any in our research, in support of the assertion.

It is well settled that an infant is generally liable for his torts. *Fry* v. *Leslie*, 87 Va. 269, 274, 12 S. E. 671, 672; *Saum* v. *Coffelt*, 79 Va. 510, 515; 9 Mich. Jur., Infants, § 12, p. 726; 43 C. J. S., Infants, § 91, p. 206, 207; 1 Cooley on Torts, 4 ed., § 66, pp. 194 *et seq.*

At common law an infant was "entitled to his own property rights and the enforcement of his own choses in action * * * including those in tort, and was liable in turn as an individual for his own torts." Prosser on Torts, 2 ed., Domestic Relations, § 101, p. 675.

It cannot be assumed, because no authority has been found permitting an unemancipated infant to assert his claim for personal injuries against his unemancipated brother, that no such right existed at common law. On the contrary, it may be considered that since an infant has the right to sue for torts committed against him no prohibition existed against suing his minor brother under the common law. Although the case of *Dunlap* v. *Dunlap*, 84 N. H. 352, 150 A. 905, 906-908, 71 A. L. R. 1055, 1058, 1060, deals with the right of an infant to sue his parent for injuries sustained while in the employ of his father as a workman, there is in that case a most enlightening discussion of the rights of an infant to sue for personal injuries at common law. See also Annotation in 19 A. L. R. 2d, 429-431.

If it can be said that the absence of tort actions by brother against

---

[1] Sec. 1-10, Code of 1950.

brother at common law is because custom prohibited such actions, we perceive no sound reason for continuing such a custom. "The common law does not consist of definite rules which are absolute, fixed, and immutable like the statute law, but it is a flexible body of principles which are designed to meet, and are susceptible of adaptation to, new institutions, conditions, usages, and practices, as the progress of society may require. So, changing conditions may give rise to new rights under the law, and, also, where the reason on which existing rules of the common law are founded ceases, the rules may cease to have application. * * *" 15 C. J. S., Common Law, § 2, p. 613.

The suggested analogy of suits for personal injuries between husband and wife or parent and child has no application. Even though a husband and wife or parent and unemancipated child are not permitted to sue each other for personal injuries in this state,[2] it does not follow that an unemancipated infant cannot sue his unemancipated brother for injuries inflicted by one on the other. As contrasted with the husband and wife relationship, there is, between two brothers, no historical or fictional background of legal unity or oneness. Neither does there exist the problem of parental discipline and support, as is found in the case of parent and child. See *Worrell* v. *Worrell, supra,* (174 Va. at p. 20, 4 S. E. 2d at p. 346); 43 Harv. L. Rev. (1929-1930), 1030, 1056, 1057; 37 Mich. L. Rev. (1938-1939), p. 658.

The infant defendant's contention that it is against the public policy of this state to permit the plaintiff to maintain this action is without foundation. Nothing in the Constitution, statutes, or judicial decisions indicates or even implies any such conclusion.

There is no merit in the prediction that to permit the plaintiff to maintain this action would disrupt family harmony. It is no more than a speculative assumption. We have held that one spouse can sue the

---

[2] A wife or husband cannot sue each other for a personal tort. *Keister's Adm'r* v. *Keister's Ex'ors,* 123 Va. 157, 161, 163-164, 96 S. E. 315, 316, 317, 1 A. L. R. 439; *Furey* v. *Furey,* 193 Va. 727, 729-730, 71 S. E. 2d 191, 192. However, a husband or wife can maintain a suit against the other for property damages caused by other spouse's tort. *Vigilant Insurance Co.* v. *Bennett,* 197 Va. 216, 224, 225, 89 S. E. 2d 69, 75.

An unemancipated child cannot sue his parent for a personal tort. *Norfolk Southern R. Co.* v. *Gretakis,* 162 Va. 597, 600, 174 S. E. 841, 842; *Brumfield* v. *Brumfield,* 194 Va. 577, 582, 74 S. E. 2d 170, 174. But an infant is allowed to maintain an action against the parent for negligence where "the injuries [sustained] were occasioned in the performance of the duties of a common carrier, not in the parental relation-[ship]." *Worrell* v. *Worrell,* 174 Va. 11, 27, 4 S. E. 2d 343, 349.

other for property damages (*Vigilant Insurance Co.* v. *Bennett, supra*), and an infant can sue a parent where the injuries sustained were occasioned while in the performance of duties as a common carrier (*Worrell* v. *Worrell, supra*), and there is no logical reason for denying an unemancipated infant the right to sue his unemancipated brother for a tort because of possible disruption of family harmony.

The infant defendant's argument that tort actions between brothers would open the door to fraud and collusion, because of liability insurance, is based purely on an assumption. Fraud is never presumed. There is no more danger of fraud and collusion between minor brothers than there is between a minor brother and an adult brother, other relatives, host and passenger, or intimate friends, where actions are permitted. Courts should not immunize tort-feasors because of the possibility of fraud or collusion. It is more important to protect an infant in his person than to avoid the possibility of fraud and collusion by the denial of such protection. If actions were barred because of the possibility of fraud many wrongs would be permitted to go without redress. It can also be said that the relationship of brothers living in the same house may "render innocuous many acts and omissions that would usually be tortious."[3] If fraud and collusion do exist in an action between brothers, they may be ferreted out in the same manner in which courts and juries handle that situation in other cases.

The aim of the law is to deal with realities, and where there is no reason for a rule one cannot be assumed to exist. As so aptly stated by Mr. Justice Spratley in *Worrell* v. *Worrell, supra,* (174 Va. at pp. 28, 29, 4 S. E. 2d at p. 350), "Reason is not only the life of the law, but the inspiration and glory of the law. As reason is affected by facts and circumstances, so are legal principles based thereon. If that were not so, the elementary and fundamental principle and aim of the law to provide justice and fair dealing would be hopeless of attainment."

We hold that an unemancipated infant may maintain a tort action against his unemancipated brother. To deny this right would be to graft an unjustified exception on the common law right of an infant to sue and be sued for his torts.

For the reasons given, the judgment of the lower court is

*Reversed and remanded.*

---

[3] 43 Harv. L. Rev. at p. 1077.