## Richmond

CHRISTINE MARGARET SMITH, AN INFANT, ETC. v. JAY G. KAUFFMAN, ADMINISTRATOR, ETC., ET AL.

September 1, 1971.

Record No. 7557.

Present, All the Justices.

*James A. Eichner* (*Allen, Allen, Allen & Allen,* on brief), for plaintiff in error.

*Richard W. Schaffer* (*A. Scott Anderson; Sands, Anderson, Marks & Clarke,* on brief), for defendants in error.

GORDON, J., delivered the opinion of the court.

A seven year old child brought this action against the administrator of her stepfather's estate to recover for injuries suffered in an auto-

mobile accident, allegedly as a result of the stepfather's negligence. The trial court held that the plaintiff-child could not maintain the action because her stepfather, who stood *in loco parentis* to the child, was immune from liability.[1] The court held alternatively that if the plaintiff could maintain the action, her stepfather owed only slight care because she was a gratuitous guest-passenger. Va. Code Ann. § 8-646.1 (1957). The court dismissed the action, and this appeal ensued.

We are called on to reexamine the rule of intra family tort immunity. If the plaintiff passes that barrier, we will decide whether the operator of an automobile owes the duty of ordinary care or only slight care to a seven year old passenger who is gratuitously transported.

## I

In 1934 we adopted the rule that an unemancipated minor child cannot maintain an action against his parent to recover for personal injuries caused by the parent's negligence. *Norfolk Southern R. R. v. Gretakis*, 162 Va. 597, 174 S.E. 841 (1934).[2]

Other courts have reasoned that intra family tort actions should be proscribed because of the possibility of fraud or collusion. *W. Prosser, Law of Torts*, § 122 at 865-66 (4th ed., 1971). But we rejected that theory in *Midkiff v. Midkiff*, 201 Va. 829, 113 S.E.2d 875 (1960), involving an action between brothers. We pointed out that "[i]f actions were barred because of the possibility of fraud many wrongs would be permitted to go without redress". *Id.* at 833, 113 S.E. 2d at 878. In the same vein, the Supreme Court of New Jersey recently said: "We do not believe that the judiciary should continue to refuse to hear an entire class of actions simply because some of these claims may be the product of venality". *France v. A.P.A. Transport Corp.*, 56 N.J. 500, 505, 267 A.2d 490, 493 (1970).

Courts have also reasoned that parental immunity could be supported on an analogy to the common law rule proscribing interspousal personal injury actions. *W. Prosser, Law of Torts, supra.* We rejected that theory in *Worrell v. Worrell*, 174 Va. 11, 4 S.E.2d 343 (1939).

---

[1] Conceding that the stepfather stood *in loco parentis* to the plaintiff, plaintiff's counsel makes no contention that the intra family tort immunity rule should be held inapplicable because the stepfather had not adopted the plaintiff-child.

[2] This rule was first adopted in this country in *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (1891). It was followed by many other courts in this country, perhaps under the mistaken belief that the rule was part of the English common law. See *Worrell v. Worrell*, 174 Va. 11, 18, 4 S.E.2d 343, 346 (1939).

The rule in this State is therefore grounded solely on the theory that a suit by a child against his parent "tends to disturb the peace and tranquility of the home, or disrupt the voluntary and natural course of disposal of the parents' exchequer". *Worrell* v. *Worrell, supra* at 19, 4 S.E.2d at 346.

The intra family immunity rule applies only to personal injury actions, not to property damage actions. *See Midkiff* v. *Midkiff,* 201 Va. 829, 113 S.E.2d 875 (1960). Within the family, the rule encompasses only actions between husband and wife and between parent and child, not actions between two children. *Id.* And exceptions have been carved out of the rule of immunity in actions by child against parent. An emancipated child can maintain a personal injury action against his parent, *see Brumfield* v. *Brumfield,* 194 Va. 577, 74 S.E.2d 170 (1953), and, even though unemancipated, a child can bring a personal injury action against his parent if they stand in the relation of servant and master, *see Norfolk Southern R.R.* v. *Gretakis, supra.*

In *Worrell* v. *Worrell, supra,* we added another exception to the rule of parental immunity. That case involved an action by an unemancipated child against her father for personal injuries suffered when a bus collided with another motor vehicle. The plaintiff-child was a ticketed passenger in the bus; the defendant-father was the owner of the bus, which was operated as a common carrier.

Speaking of the rule of parental immunity adopted five years earlier, we said in *Worrell*:

> "In later years, economic, social and legislative changes have caused a judicial reaction to the earlier views. Modern methods of business, new or enlarged occupational capacities and the advent of the automobile and liability indemnity insurance have placed the parties in a different position. Therefore, the effect of the earlier decisions must be considered in relation to the occasion, facts and laws upon which they were based. A correct determination of each case must necessarily depend upon its facts and circumstances and the law applicable thereto. Rules of thumb must give way to rules of reason."

*Id.* at 20, 4 S.E.2d at 346-47.

In view of the changed circumstances in 1939, we held in *Worrell* that an unemancipated child could maintain an action against her

parent for personal injuries incurred while riding as a passenger on a common carrier:

> "[W]e think that the statutes of this State providing for compulsory insurance indemnity to passengers of a common carrier for damages resulting from the negligent operation of its vehicles, evidence a purpose and policy to afford protection to all such persons from damages arising in tort from the relationship of passenger and carrier."

*Id.* at 28, 4 S.E. 2d at 350.

The enactment of Virginia uninsured motorist laws in 1958 has effected a further and major change of circumstances. One of these laws requires an uninsured motor vehicle endorsement to each policy of automobile liability insurance issued or delivered by an insurer licensed in this State covering a motor vehicle principally garaged or used in this State. Va. Code Ann. § 38.1-381 (1970). Under the endorsement, the insurer must agree to pay to the insured all sums that he may be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle or unknown operator of a motor vehicle, within the limits prescribed by statute: $20,000 for bodily injury to or death of any one person and $30,000 for bodily injury to or death of two or more persons in any one accident, and $5,000 for damage to property in any one accident. Va. Code Ann. §§ 38.1-381(b) (1970) and 46.1-1(8) (Supp. 1971).[3]

A complementary law, first enacted in 1958, encourages the obtaining of insurance coverage by requiring that every person who seeks registration of an "uninsured motor vehicle" pay a $50 fee to the State Uninsured Motorists Fund. This fee must be paid as a prerequisite to registration of a motor vehicle unless the vehicle has liability insurance coverage up to the limits described in the preceding paragraph or unless the owner (i) qualifies the vehicle as an "insured motor vehicle" by giving a bond or depositing cash or securities in lieu of insurance or (ii) qualifies as a self-insurer. Va. Code Ann. §§ 46.1-167.2(b) (1967), -395 (1967), -504 (Supp. 1971). According to the records of the State Division of Motor

---

[3] Code § 38.1-381(b) permits a $200 deductible clause for property damage.

The definition of an uninsured motor vehicle is considerably broader for the purposes of the uninsured motor vehicle endorsement, *see* Code § 38.1-381(c), than for the purposes of the Uninsured Motorists Fund, discussed *infra*.

Vehicles, only 1.57% of the motor vehicles registered in Virginia are "uninsured motor vehicles".[4]

. The very high incidence of liability insurance covering Virginia-based motor vehicles, together with the mandatory uninsured motorist endorsements to insurance policies, has made our rule of parental immunity anachronistic when applied to automobile accident litigation. In such litigation, the rule can be no longer supported as generally calculated to promote the peace and tranquillity of the home and the advantageous disposal of the parents' exchequer. A rule adopted for the common good now prejudices the great majority.

What the New Jersey Supreme Court said while abrogating interspousal immunity in automobile accident litigation is equally pertinent to this case:

"[R]ealistically, it must be remembered when dealing with the question of conjugal harmony that today virtually every owner of a motor vehicle with a sense of responsibility carries liability insurance coverage.[3] The presence of insurance militates against the possibility that the interspousal relationship will be disrupted since a recovery will in most cases be paid by the insurance carrier rather than by the defendant spouse. In fact, it is ironic that the presence of insurance has spawned the second rationale, i.e., that of protecting the insurance carriers against fraud and collusion. That rationale belies the possibility that domestic harmony will be disturbed since its very premise is that the interspousal relationship is so harmonious that fraud and collusion will result. Domestic harmony may be more threatened by denying a cause of action than by permitting one where there is insurance coverage. The cost of making the injured spouse whole would neces-

---

[4] The percentage set forth in the text (1.57) was derived by dividing the total motor vehicles other than State vehicles registered in Virginia during the period March 15, 1970-March 14, 1971 (2,324,844) into the vehicles as to which a fee was paid to the Uninsured Motorists Fund during that period (36,443). If State vehicles are included in the total registered, the percentage changes from 1.57 to 1.54.

For tables setting forth, for each of the years 1965-1970, the number of uninsured motorists and the number of private passenger automobiles registered (estimated for 1970), see R. L. Brown, Availability of Automobile Liability Insurance in Virginia and the Need for Competitive Ratemaking (Preliminary Draft), App. 5 & 6. Those tables, which make no adjustment for false certifications of insurance status (the number of which is unknown), indicate that the percentage of uninsured motor vehicles registered in Virginia dropped from 4.18 for the year 1966 to 1.24 for the year 1970.

sarily come out of the family coffers, yet a tortfeasor spouse surely anticipates that he will be covered in the event that his negligence causes his spouse injuries. This unexpected drain on the family's financial resources could likely lead to an interference with the normal family life. And it is doubtful that this void in insurance coverage would comport with the reasonable expectations of the insured that this Court has so often sought to protect. . . . In short, the immunity doctrine cannot be fairly sustained on the basis that negligence suits between husbands and wives will disrupt the harmony of the family.

---

[3] "The Department of Motor Vehicles indicates that between June 1, 1969 and May 31, 1970, 98.24% of New Jersey motor vehicle owners registered their vehicles as insured."

*Immer* v. *Risko*, 56 N.J. 482, 489-90, 267 A.2d 481, 484-85 (1970); see *France* v. *A.P.A. Transport Corp.*, 56 N.J. 500, 267 A.2d 490 (1970) (abrogating parental immunity in automobile accident litigation).

Recognizing that today's changed circumstances vitiate the underlying reason for a rule of parental immunity in automobile accident litigation, we follow the precedent of *Worrell* v. *Worrell, supra,* and abrogate that rule. The plaintiff can therefore maintain this action. Our decision of course relates only to the kind of action before us, an action by child against parent to recover for injuries sustained in a motor vehicle accident.

## II

Under a Virginia statute, which codifies the rule of *Boggs* v. *Plybon*, 157 Va. 30, 160 S.E. 77 (1931), a person transported in a motor vehicle "as a guest without payment for such transportation" cannot recover for death or injuries resulting from the operation of the motor vehicle except upon proof of the owner's or operator's gross negligence or willful and wanton conduct. Va. Code Ann. § 8-646.1 (1957). Plaintiff's counsel contends that Code § 8-646.1 is not applicable to the case now before us because a seven year old child is not capable of being a "guest without payment". Counsel therefore contends that recovery can be predicated upon proof of ordinary negligence.

Language in two recent Virginia cases may indicate we have adopted a rule that a person who is gratuitously transported is a

guest within the meaning of Code § 8-646.1, however young that person may be. *Laughorn v. Eanes,* 207 Va. 584, 151 S.E.2d 378 (1966); *Ruett v. Nottingham,* 200 Va. 722, 107 S.E.2d 402 (1959). In neither case, however, did counsel argue in this Court that the infant plaintiff was not a guest or that the gross negligence rule was not applicable. What we said in each case was said in the context of an express or tacit concession that the infant plaintiff was a guest and the gross negligence rule was applicable. So we have not previously decided the question raised on this appeal.

■ Some courts have held that guest statutes encompass young children who are transported gratuitously only if they are transported with parental consent. Other courts disregard parental consent. They hold either that a young child cannot assume the status of guest-passenger or, conversely, that a young child automatically assumes that status if he is gratuitously transported. *See Rosenbaum v. Raskin,* 45 Ill. 2d 25, 29, 257 N.E.2d 100, 102 (1970).

We agree with the courts that hold a child can become a guest in a motor vehicle and subject himself to the gross negligence rule only if he can knowingly and voluntarily accept an invitation to become a guest. *Rosenbaum v. Raskin, supra; Green v. Jones,* 136 Colo. 512, 319 P.2d 1083 (1957); *see W. Prosser, Law of Torts,* § 60 at 385 (4th ed. 1971). We adopt that rule and will fix the dividing line between those children who can and those who cannot knowingly and voluntarily accept an invitation to become a guest.

Virginia has adopted the rule that "a child under seven years of age cannot be guilty of negligence, and that as to children between seven and fourteen years of age the presumption is they are incapable of exercising care and prudence and this presumption prevails unless rebutted by sufficient proof to the contrary". *Morris v. Peyton,* 148 Va. 812, 821, 139 S.E. 500, 502-03 (1927). We are now dealing with capacity to assume a risk, rather than capacity to be negligent. *See Boggs v. Plybon, supra.* So we will borrow from, rather than adopt entirely, the rule respecting the capacity of young children to exercise care and prudence.

We hold that a child under the age of fourteen years is incapable of knowingly and voluntarily accepting an invitation to become a guest in an automobile so as to subject himself to the gross negligence rule. Accordingly, the plaintiff in this case was owed the duty of ordinary care, rather than slight care.

*Reversed and remanded.*

I'ANSON, J., concurring in part and dissenting in part.

I agree with the majority that a child can maintain an action against a parent to recover for injuries sustained in a motor vehicle accident.

But I cannot agree that as a matter of law "a child under the age of 14 years is incapable of knowingly and voluntarily accepting an invitation to become a guest in an automobile so as to subject himself to the gross negligence rule."

In adopting this rule the majority say that since we "are now dealing with capacity to assume a risk, rather than capacity to be negligent" they are justified in borrowing "from, rather than adopting entirely, the rule respecting the capacity of young children to exercise care and prudence." I do not agree that it requires more intelligence and judgment on the part of a child to assume a risk than to be guilty of negligence.

I think a jury should determine whether a child between the ages of 7 and 14 is capable of becoming a guest passenger on the basis of his age, ability, intelligence and experience, and whether such a child could assume a risk.

COCHRAN, J., concurring in part and dissenting in part.

The majority opinion moves this court into an unaccustomed role in deciding a question of public policy. If it were a case of first impression a more persuasive argument in support of this position might be made. But we are asked, and the majority have agreed, to reverse precedents long established and maintained, in order to eliminate parental immunity in one particular class of cases which does not involve wilful misconduct but only negligence. Believing this to be unjustifiable I respectfully dissent.

I do not question the power or authority of this court to overrule the legal principle which we laid down in Norfolk Southern R.R. v. Gretakis, 162 Va. 597, 174 S.E. 841 (1934) and reaffirmed in Brumfield v. Brumfield, 194 Va. 577, 74 S.E. 2d 170 (1953). But I question the advisability of doing so. The rule could have been changed by statute at any time our citizens, acting through their elected representatives, desired. I find it significant that the legislative branch, which, in carrying out its duties, has never been unduly reluctant to act where it has been deemed necessary in the public interest to reverse the effect of our decisions, has not legislated on this subject. Presumably a majority of the legislators and their con-

stituents believe that the general principle of parental immunity is in accord with sound public policy. So I view with a jaundiced eye what appears to me to be an invasion of an area of responsibility more appropriately entrusted to the legislature.

I also disagree in principle with the majority opinion. It is based on a fallacious rationalization that, since most Virginia drivers are insured against the consequences of their negligence, family harmony and family finances will not suffer from the elimination in automobile accident cases of the parental immunity doctrine heretofore applied to unemancipated minor children. This reasoning overlooks one important fact. Personal injury suits are not always settled out of court and litigation, even between members of the same family, is still an adversary proceeding.

In a contested case between parent and child there may be either collusion on the one hand or direct contradiction of testimony on the other. In either event by this decision we will have contributed to the deterioration of the moral fibre of our children or promoted distrust, disrespect and dissension in the home.

It is true that we have qualified the parental immunity rule by making exceptions where an additional relationship exists, such as master and servant (*see Norfolk Southern R.R. v. Gretakis, supra*) or common carrier and passenger (*Worrell v. Worrell,* 174 Va. 11, 4 S.E.2d 343 (1939)). Furthermore, the reasoning behind the immunity rule cannot be applied where the child has been injured by wilful misconduct of the parent and in such case a right of action should be maintainable. *See* Annot., 19 A.L.R.2d 423, 451. But these logical exceptions do not, in my opinion, justify eliminating the rule in the present case.

I would affirm the ruling of the trial court on this point.

HARMAN, J., concurring in part and dissenting in part.

I respectfully dissent from the holding of the majority which abrogates the parental immunity rule in automobile negligence cases.

The majority appears to ground its reasoning on the fact that liability insurance coverage exists in the vast majority of all cases arising as the result of automobile accidents. They overlook, however, that this decision has the effect of rewriting existing insurance contracts to extend coverage for injury to persons not contemplated by the contracting parties when coverage was written.

The rule adopted by the majority is a rule of expediency and not

of reason. Should a child be permitted to sue his parent for personal injury received as the result of the parent's negligence in operating an automobile and not be permitted to sue for negligence of the parent in operating a motor boat or a pony cart? Does reason dictate that a child should recover for injury as the result of his parent's negligence in operating the family car and not recover for injury incurred through the parent's negligence in operating the family lawn mower?

The failure of my brethren of the majority to abrogate the rule in its entirety is particularly significant. To me it indicates that they must be convinced that the underlying reasons for the rule, namely, to avoid disruption of the peace and tranquility of the home and to avoid disruption of the voluntary and natural course of the parents' exchequer, are still valid.

The parental immunity rule was recognized as the law in Virginia in *Norfolk Southern R. R. v. Gretakis*, 162 Va. 597, 174 S. E. 841 (1934). Eighteen regular sessions of the General Assembly have been held since that time. The failure of the General Assembly to modify this rule amounts, at least, to a tacit approval of the rule as established by this court.

To abrogate the rule, as the majority does today, amounts to judicial legislation in the sensitive area of the legal relationship between parent and child. In my opinion the enactment of such legislation should be left to the General Assembly, where it properly belongs.