**Walter C. WILLIAMS, Sr., et al., Appellant, Plaintiffs below.**

v.

**Bertha L. WILLIAMS, Appellee, Defendant below.**

Supreme Court of Delaware.

Submitted Sept. 22, 1976.

Decided Dec. 29, 1976.

Julian D. Winslow of Winslow & Winslow, Wilmington, for plaintiff, appellant.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for defendant, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

In this automobile negligence case, the issue for decision is whether an unemancipated child may recover in an action against a parent for injuries caused by the parent's negligent operation of the automobile. The question of parental immunity in tort raised here has not been heretofore decided by this Court.

The automobile was being operated by the mother; the three children and the father were passengers. The accident occurred in Maryland, but all parties were

residents of Delaware. The father was appointed next friend for the children and filed suit on their behalf against the mother, as well as a separate claim on his own behalf. The defendant moved for summary judgment, contending that the doctrines of parental and spousal tort immunity barred the actions.

■ Faced with the threshold question of whether the immunity issues here presented are governed by Maryland law or Delaware law, the Superior Court, on the authority of *Short Line, Inc. v. Perez,* Del.Supr., 238 A.2d 341 (1968) and *Restatement (Second) of Conflict of Laws,* § 169(2) (1971), resolved that Delaware law was applicable. We agree for the reasons there set forth.

On the merits, the Superior Court granted the mother's motion for summary judgment on the ground of intrafamily tort immunity, citing *Plotkin v. Plotkin,* Del. Super., 2 W.W.Harr. 455, 125 A.2d 455 (1924) and *Strahorn v. Sears Roebuck & Co.,* Del.Super., 11 Terry 50, 123 A.2d 107 (1956) as dispositive, respectively, of the husband's and the children's separate claims. This appeal is limited, however, to the judgment barring the claims of the children; the appeal as to the husband's claim has been abandoned. Accordingly,

we reserve for another day the question of husband-wife tort immunity under Delaware law.

## I.

■ The law of parental tort immunity is in a state of change in many jurisdictions. While the doctrine of parental immunity is still the majority rule, *Annot.,* 41 A.L.R.3d 904 (1972), legal writers have almost universally condemned it, and the judicial trend is now clearly toward a steady erosion of the doctrine by exception and repudiation.[1] See *Sorensen v. Sorensen,* Mass.Supr., 339 N.E.2d 907 (1975); *Falco v. Pados,* Pa.Supr., 282 A.2d 351, 354–55 (1971); *Hebel v. Hebel,* Alaska Supr., 435 P.2d 8 (1967); W. Prosser, Law of Torts, § 122 (4th ed. 1971).; F. Harper & F. James, Jr., *The Law of Torts,* § 8.11 (1956); McCurdy, Torts Between Parent and Child, 5 *Vill.L.Rev.* 521 (1960).

As Dean Prosser has concluded, "[f]ew topics in the law of torts, in view of modern economic, social and legislative changes, display in their treatment greater inconsistency and more unsatisfactory reasoning. This is true particularly . . . where the question is as to the civil liability . . . of parent or minor child, to one another for acts which if they were

---

1. As evidence of the growing erosion of the parental immunity doctrine, the following jurisdictions have elected to repudiate the doctrine either in whole or in part:

Alaska (Hebel v. Hebel, 435 P.2d 8 [1967]); Arizona (Streenz v. Streenz, 106 Ariz. 86, 471 P.2d 282 [1970]); California (Gibson v. Gibson, 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 [1971]); Hawaii (Petersen v. City & County of Honolulu, 51 Haw. 484, 462 P.2d 1007 [1969]); Kentucky (Rigdon v. Rigdon, 465 S.W.2d 921 [1971]); Michigan (Plumley v. Klein, 388 Mich. 1, 199 N.W.2d 169 [1972]); Minnesota (Silesky v. Kelman, 281 Minn. 431, 161 N.W.2d 631 [1968]); Nevada (Rupert v. Stienne, 528 P.2d 1013 [1974]); New Hampshire (Briere v. Briere, 107 N.H. 432, 224 A.2d 588 [1966]); New Jersey (France v. A.P.A. Transp. Corp., 56 N.J. 500, 267 A.2d 490 [1970]); New York (Gelbman v. Gelbman, 23 N.Y.2d 434, 297 N.Y.S.2d

529, 245 N.E.2d 192 [1969]); North Dakota (Nuelle v. Wells, 154 N.W.2d 364 [N.D. 1967]); Pennsylvania (Falco v. Pados, 444 Pa. 372, 282 A.2d 351 [1971]); Virginia (Smith v. Kauffman, 212 Va. 181, 183 S.E. 2d 190 [1971]); Wisconsin (Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 [1963]).

Among the various exceptions to the doctrine of parental immunity now recognized are: (1) suits by emancipated children; (2) suits against the estate of a deceased parent; (3) suits for wilful or intentionally inflicted torts; (4) suits for reckless or grossly negligent conduct; (5) suits against a parent acting in the relation of employer; and (6) suits by an unemancipated child against a parent for injury to his property interests. See *Falco v. Pados, supra,* 282 A.2d 351 at 354; *Hebel v. Hebel, supra,* at 15; Prosser, *supra,* at 866–67.

done by one ordinary person to another would be torts." Prosser, *supra,* at 859.

## II.

The genesis of the parental tort immunity doctrine has been well documented. See, e. g., McCurdy, *supra,* at 527–29. It appears that American precedent began with the 1891 case of *Hewlett v. George,* 68 Miss. 703, 9 So. 885 (1891) a decision denying a minor child an action for false imprisonment against her mother for maliciously confining the child to an insane asylum. The *Hewlett* case became the basis for a fast-growing American rule disallowing tort action by child against parent for personal injury, regardless of whether the injury was intentionally or negligently caused.

Among the various justifications in support of the parental immunity rule has been the purported analogy thereof to the earlier rule of husband-wife immunity. However, such analogy has been declared inapposite repeatedly. See, e. g., McCurdy, *supra,* at 521–27; Prosser, *supra,* at 865. Important distinctions have been noted both as to the legal development and sociological function of the relationship of husband and wife, on the one hand, and parent and child, on the other. Primary among those distinctions is the common law concept that a husband and wife were to be treated as one person, and that person was the husband. See *Plotkin v. Plotkin, supra.* As a consequence of this unity of legal identity, the wife was deemed at common law to have lost the capacity to contract for herself as well as the ability to sue or be sued without the joinder of her husband.[2] See McCurdy, Property Torts Between Spouses, 2 *Vill.L.Rev.* 447 (1957); McCurdy, Personal Injury Torts Between Spouses, 4 *Vill.L.Rev.* 303 (1959).

The common law, however, had no similar conception of unity of legal identity as between parent and minor child. In fact, the child was regarded as a separate legal person entitled to the benefits of his own property and the enforcement of his own chose in action. See McCurdy, *supra,* at 523; Harper & James, *supra,* at 647–48. Accordingly, because of this theoretical difference in the relationship of parent and child from that of husband and wife, "no emancipation acts similar to the Married Women's Acts were necessary, and statutory construction has not entered into the question of tort liability between parent and child." Prosser, *supra,* at 864–65.[3]

## III.

Today, almost without exception, those courts which have denied a cause of action to an unemancipated minor have done so pursuant to the belief that a sound public policy requires such rule for the two-fold reason that the allowance of such actions would (1) result in serious disruption of domestic tranquility; and (2) increase the number of fraudulent and collusive law suits. See *Annot., supra,* §§ 5[b & c] at 930–36. These justifications have become more and more unacceptable, however, in the light of contemporary conditions and modern concepts of fairness.

2. Not until the initial passage, in 1844, of the Married Women's Acts, did a woman, by statute, secure a separate legal estate in her own property. While courts have generally agreed that these Acts enable a wife to maintain an action against her husband for any tort committed against her property interests, only about half the courts which have considered the question interpret these statutes as altering the common law and allowing an action for personal torts to be maintained between spouses. Prosser, *supra,* at 862.

3. Legal commentators have noted, that with respect to matters affecting property, causes of action on the part of either the parent or child were freely recognized; thereby leading Dean Prosser to conclude, "there is no good reason to think that the English law would not permit actions for personal torts as well . . . ." Prosser, *supra,* at 865; c. f. McCurdy, *supra,* at 526–27.

### A.

Among the reasons for dissatisfaction with the domestic-tranquility justification is the fact that domestic tranquility has not proven a sufficient consideration to bar other types of intrafamily litigation such as (1) tort actions for damage to property interests, and (2) personal injury actions against a sibling. See, e. g., *Signs v. Signs*, 156 Ohio St. 556, 103 N.E.2d 743 (1952); *Midkiff v. Midkiff*, 201 Va. 829, 113 S.E.2d 875 (1960). Moreover, an increasing number of courts are of the opinion that the injury itself, and not the consequent suit, is the factor which may upset domestic tranquility. See, e. g., *Sorensen v. Sorensen, supra,* at 913; *Falco v. Pados, supra,* 282 A.2d at 351. C. F. Prosser, *supra,* at 863.

The most cogent rebuttal, however, of the domestic-discord justification is found in today's prevalence of liability insurance. In the steady erosion of the immunity doctrine, increasing emphasis is laid upon the mitigating factor which liability insurance brings into a negligence action between family members. E. g., *Goller v. White*, Wis. Supr., 122 N.W.2d 193, 197 (1963); *Hebel v. Hebel, supra,* at 13; *Sorensen v. Sorensen, supra,* at 913–14.

■ While we agree with the proposition that insurance cannot create a liability where no legal duty previously existed, see *Badigian v. Badigian*, N.Y.App., 9 N.Y.2d 472, 215 N.Y.S.2d 35, 174 N.E.2d 718 (1961), (Fuld, J., dissenting), the factor of insurance is not thereby excluded from this Court's calculus. Since it is the apprehension of domestic discord which, in large measure, gives rise to the immunity doctrine, to the extent liability insurance assuages that concern, it becomes a determinative consideration in deciding whether the doctrine should be adopted. *Id.* at 41; accord *Goller v. White, supra,* 122 N.W.2d at 197; *Sorensen v. Sorensen, supra,* at 914.

For these reasons, we are in agreement with the growing number of courts which have reached the following conclusion: when liability insurance exists, the domestic tranquility argument is, at best, hollow. Liability insurance impersonalizes the suit and negates the possible disruption of family harmony by easing the financial repercussions of the accident. In short, "[w]hen insurance is involved, the action between parent and child is not truly adversary; both parties seek recovery from the insurance carrier to create a fund for the child's medical care and support without depleting the family's other assets." *Sorensen v. Sorensen, supra,* at 914.

### B.

The second justification most often asserted in support of denying the child a cause of action against a negligent parent is the belief that such suits foster fraud and collusion by the family against the insurance carrier. See, e. g., *Barlow v. Iblings*, 261 Iowa 713, 156 N.W.2d 105 (1968); *Vaughan v. Vaughan*, Ind.App., 316 N.E.2d 455 (1974). We are of the opinion, however, that the mere possibility of fraud and collusion is too tenuous to be the basis for an absolute rule denying recovery to children in all cases in tort against parents.

The risk of fraud and collusion is a problem in any law suit. We guard against this possibility by relying upon the trial judge and the jury to determine the facts, weed out the specious claims, and reach a proper verdict. Moreover, in this type of case as in others, the insurance carrier itself has effective means of detecting fraudulent claims. See *Sorensen v. Sorensen, supra,* at 914; *Falco v. Pados, supra,* 282 A.2d at 356; *Badigian v. Badigian, supra,* 215 N.Y.S.2d at 42, 174 N.E. 2d at 723, (Fuld, J., dissenting); Harper & James, *supra,* at 650.

As the Supreme Court of Pennsylvania has stated in this connection:

"In the last analysis it is much to be preferred that we depend upon the efficacy of the judicial process to ferret out the

meritorious from the fraudulent rather than using a broad broom to sweep away a class of claims, a number of which are admittedly meritorious."

*Falco v. Pados, supra,* 282 A.2d at 356.

And the Supreme Court of New Jersey, in *Immer v. Risko,* 56 N.J. 482, 267 A.2d 481, 488 (1970), stated the relevant concern as follows:

"In a day when automobile accidents are unfortunately becoming so frequent and the injuries suffered by the passengers are often so severe, it seems unjust to deny the claims of the many because of the potentiality for fraud of the few. Moreover, there is something wanting in a system of justice which permits strangers, friends, relatives and emancipated children to recover for injuries suffered as a result of their driver's negligence but denies this right to the driver's spouse and minor children who are also passengers in the same vehicle."

We, too, are satisfied that the fraud-collusion justification for the parental immunity rule is unacceptable. It unduly disparages the ability of the judicial system to protect itself against abuse; and, too often, it results in undue hardship and unfairness to the injured child.

## IV.

Accordingly, we are of the opinion that an absolute rule of parental immunity in tort has no rational basis under modern day conditions and circumstances, especially the prevalence of liability insurance. We hold, therefore, with an ever-increasing number of jurisdictions, that in an action for negligence arising from an automobile accident, brought on behalf of an unemancipated minor child against a parent, the doctrine of parental immunity is not applicable to the extent of the parent's automobile liability insurance coverage;

but that, otherwise, the doctrine is applicable in such case.

* * *

In so holding, we do not overrule *Strahorn v. Sears Roebuck & Co., supra.* That case is clearly distinguishable on its facts. We hold only that the Superior Court incorrectly determined *Strahorn* to be dispositive of the issue of parental immunity in the instant case. In *Strahorn,* the child was injured on a department store escalator after twisting free of his father's grip. Directly involved was the question of the exercise of parental discretion and control. Whether this Court will adopt the doctrine of parental immunity when such issues of parental authority and discretion are presented must await another case.

* * *

Finally, the defendant contends that the General Assembly rather than this Court should speak definitively upon the subject of parental tort immunity. In support of this contention, the defendant cites *Justice v. Gatchel,* Del.Supr., 325 A.2d 97 (1974) wherein we declined to abrogate the Delaware Automobile Guest Statute. The defendant's reliance upon *Justice* is misplaced. The decision in *Justice* was grounded upon the doctrine of separation of powers and this Court's reluctance to set aside a public policy announced by the Legislature. There is no similar concern as to the judge-made rule of parental immunity. "[W]here the rule is court made, it may be court modified if reason and a right sense of justice recommend it." *Badigian v. Badigian, supra,* 215 N.Y.S.2d at 43, 174 N.E.2d at 724; accord, *Goller v. White, supra,* at 198; *Falco v. Pados, supra,* 282 A.2d at 356.

* * *

Accordingly, we reverse the summary judgment in favor of the defendant-mother against the plaintiff-children, and remand for further proceedings in accordance with this opinion.